UNITED STATES, to Use of TIDEWATER STEEL CO., v. PERTH AMBOY SHIPBUILDING & ENGINEERING CO. et al.

(Circuit Court, D. New Jersey. May 17, 1905.)

1. BOND—ACTION—PLEADING—CONTRACT WITH UNITED STATES.

In an action brought upon a bond given under the act of Congress of August 13, 1894, c. 280, § 1, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523], against the principal and surety therein named, demurrer was filed to the declaration because it was not averred therein that the claim of the

137 F.—44

United States thereunder, if any, had been paid. *Held*, that such averment was unnecessary, because the United States is not a preferred creditor under said bond.

2. SAME.

The same declaration was also demurred to upon the further ground that it did not aver that there were no other persons having claims or demands against the defendants under said bond, or if there were such creditors, that they had been paid. *Held*, further, that such averment was unnecessary, since the act referred to confers an independent right of action upon each creditor having a claim under the bond.

(Syllabus by the Court.)

On Contract. On demurrer to declaration.

George H. Pierce, for plaintiff.
Adrian Lyon, for Perth Amboy Shipbuilding & Engineering Co.
Frank P. McDermott, for Surety Co.

CROSS, District Judge. This action is brought upon a bond made by the Perth Amboy Shipbuilding & Engineering Company, as principal, and the United States Fidelity & Guaranty Company, as surety, to the United States of America, dated January 27, 1903, in the penal sum of $30,000, and containing the following condition:

"Now, therefore, if the above-bounden Perth Amboy Shipbuilding and Engineering Co., shall and will, in all respects, duly and fully observe and perform all and singular the covenants, conditions, and agreements in and by said contract agreed and covenanted by said Perth Amboy Shipbuilding and Engineering Co., to be observed and performed according to the true intent and meaning of the said contract, and as well during any period of extension of said contract that may be granted on the part of the United States as during the original term of the same, and shall promptly make full payments to all persons supplying it labor or material in the prosecution of the work provided for in said contract, then the above obligation shall be void and of no effect; otherwise to remain in full force and virtue."

The suit is in the name of the United States of America, for the use of the Tidewater Steel Company, against the obligors in said bond; and in the declaration it is alleged that the defendant the Perth Amboy Shipbuilding & Engineering Company was declared insolvent August 3, 1903, by the decree of the Court of Chancery of the state of New Jersey, that a receiver was appointed by said court, that said suit is still pending, and that permission to bring this suit has been given by said court. The declaration then sets out the bond, and avers that the contract referred to in the condition thereof was entered into between the Perth Amboy Shipbuilding & Engineering Company and Col. D. D. Wheeler, assistant quartermaster general of the United States army, on January 24, 1903, and provided for the furnishing of all the material and labor necessary to construct and completely equip two standard steel screw steamers for the harbor service of the quartermaster's department, in accordance with the requirements of the specifications and drawings thereto attached; that thereupon the defendant the Perth Amboy Shipbuilding & Engineering Company proceeded with the execution of said contract, and partially built and equipped said steamers; that after the said last-mentioned defendant commenced said work, to wit, on January 31, 1903, it became and was necessary,

in the execution of said contract, that said defendant should have and use certain material (steel boat plates), particularly mentioned in the declaration, in and for the completion of said steamers, and that the said Tidewater Steel Company did on divers days and times, which are particularly mentioned, deliver to the defendant the Perth Amboy Shipbuilding & Engineering Company, at its request, the above-mentioned material, which was used upon said two steamers in the construction and equipment thereof under said contract; that such material so supplied and used was worth the sum of $7,894.39, which sum the defendant the Perth Amboy Shipbuilding & Engineering Company promised and agreed to pay the said Tidewater Steel Company therefor. The declaration then assigns, as a breach of the said bond, that said Perth Amboy Shipbuilding & Engineering Company has not performed all the undertakings in the said writing obligatory by it to be performed, in this: that it has not made full payments, or any payments, to the Tidewater Steel Company for the material aforesaid supplied by it to the Perth Amboy Shipbuilding & Engineering Company for use in the construction and equipment of said steamers, and actually used therein. It then avers that an itemized statement of the material so furnished and used, with the prices charged therefor, is annexed to the declaration, and that no part thereof has been paid. Then follow certain averments not necessary to be stated, as they have no bearing upon the questions to be decided herein.

To the foregoing declaration each of the defendants has filed a demurrer, and the grounds therefor are as follows:

"Because it does not appear therein that the United States of America has been satisfied for its claims and demands against said defendant on said bond; and also because it does not appear that full payments have been made to all other persons supplying labor or material in the prosecution of the work provided for in said contract; and also because it does not appear whether or not there are any other persons who have any claim or demand against said defendant on said bond for supplying such labor or material, and also because it does not appear that all persons who have any claims or demands against said defendant on said bond for supplying such labor or materials are parties to said suit; and also because no right of action upon said bond accrued to the plaintiff until all claims and demands thereon to the United States have been satisfied, and said declaration fails to show such satisfaction."

It will be unnecessary to consider these objections at any considerable length. The first and last reasons are practically alike, while the remaining three raise substantially the same question.

As to the first and last: They are based upon the theory that the United States is a preferred creditor under the bond, and that consequently it was necessary for the plaintiff to aver in its declaration that its claim had been paid. Such assumed theory, however, is untenable; the United States has no preference under such a bond; the bond was intended for the benefit, not only of the United States, but of all persons furnishing materials or labor under the contract for the performance of which the bond was given as indemnity. Section 3466 of the Revised Statutes [U. S. Comp. St. 1901, p. 2314] has no bearing upon the controversy arising under the bond in suit; it undoubtedly gives a preference to the United States over

other creditors against an insolvent debtor, but no such preference is established under a bond given, as this was, pursuant to the act of April 13, 1894, c. 280, § 1, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523]. It is unnecessary to reason this matter further, as it has already been settled by the Circuit Court of Appeals of this circuit in the case of United States v. Heaton, 128 Fed. 414, 63 C. C. A. 156, which approved upon this point the decision of the lower court, reported in (C. C.) 124 Fed. 699. Judge Dallas, in deciding the case in the Court of Appeals, adopted the language of Judge McPherson, as follows:

"The United States has no priority against a surety, for the reason that no statute has given it such a privileged position, while it has priority against an insolvent principal, for the analogous reason that Congress has seen fit so to enact. The right of a surety, after he has paid the money due upon his bond to the United States, to be preferred in the distribution of his insolvent principal's estate, does not depend at all upon the answer of the question whether the United States has previously had priority against the surety, but rests solely upon the language of section 3468 [U. S. Comp. St. 1901, p. 2314], which expresses the legislative will upon the subject. It is this section that is the source of the surety's right, and I think its true construction gives priority for so much, and no more, of the government's claim as the surety may have been obliged to pay by legal proceedings, or may have paid voluntarily in discharge of his obligation upon the bond."

The surety company can find ample relief in the premises by paying the amount of its bond into court, as was done in that case, or by a suit in equity, as indicated in the cases of Thomas Laughlin Co. v. Am. Surety Co. et al., 114 Fed. 627, 51 C. C. A. 247; United States v. American Surety Co. et al. (C. C.) 126 Fed. 811; and American Surety Co. v. Lawrenceville Cement Co. (C. C.) 96 Fed. 25; s. c. (C. C.) 110 Fed. 717.

As to the other grounds of demurrer, they must likewise, in our opinion, be overruled. The act under which the bond in suit was given unquestionably allows each creditor to bring an individual suit for the establishment of his claim. The language used is clear, and susceptible of no other interpretation. Numerous suits of this character have been brought in the courts, as will be seen from an examination of the above and other reported cases, and we do not find in any of them that it has ever been claimed that such a suit would not lie, notwithstanding the fact that there might be other claimants under the bond. In the cases cited above such suits were either brought or threatened, and it was to avoid their multiplicity that the surety company sought relief, either by paying the amount of its bond into court, or by filing a bill in equity in the nature of a bill of interpleader. Whether there are other, or how many other, creditors secured by this bond, or whether all their claims have been paid, is, under the act of Congress, a matter of indifference to the Tidewater Steel Company. It can sue without respect to their claims, and they can sue without respect to its claim, since all have independent causes of action. The case of American Surety Company v. Lawrenceville Cement Company, supra, besides establishing the propositions that the fund is to be distributed ratably, and that no priority can be given to one creditor over another, also

shows indirectly that actions at law were properly commenced in the first instance by the individual creditors, from the fact that the court allowed the several plaintiffs in such actions the costs incurred by them up to the time when the bill of complaint was filed. In our opinion, the grounds of demurrer under consideration must also be overruled.

The defendant the United States Fidelity & Guaranty Company submitted one ground of demurrer additional to the above, to wit, that the declaration stated no cause of action against it. This reason might be passed without consideration, since it does not specify any particular defect in the declaration at which it is aimed; it is equivalent to a general demurrer. The New Jersey statute, however, requires grounds of demurrer to be specific, and in effect abolishes the common-law general demurrer. Waiving, however, the general character of this last reason, we will for a moment consider the point made under it, that the act of Congress (Act Aug. 13, 1894, c. 280, § 1, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523]) gives a right of action only to persons supplying labor and materials "for the construction of any public building, or the prosecution and completion of any public work, or for repairs upon any public building, or public work," which provision does not include steamers for the harbor service of the quartermaster's department; and counsel cites in support of his proposition definitions of "public works" from the Century Dictionary and the Am. & Eng. Ency. of Law (2d Ed.). Without quarreling with these definitions, we conclude that the meaning of the words "public work" in the act is broader and more comprehensive than the dictionary meaning given to "public works"; that public work is susceptible of application to any constructive work of a public character, and is not limited to fixed works. The statute should be liberally construed to accomplish its purpose. But without further discussion of the point, it is quite sufficient to say that, whether the foregoing view is correct or not, the defendants are estopped from setting up such defense; they executed the bond well knowing its intent and purpose, and, since the purpose was not immoral or illegal, they cannot now be heard to deny their liability, voluntarily assumed and undertaken.

The demurrers will be overruled as to both of the defendants, with leave to plead within 15 days if they shall so desire.