(114 App. Div. 755)
UNITED STATES, to Use of BELL et al., v. EMPIRE STATE SURETY CO.

(Supreme Court, Appellate Division, Second Department.    July 24, 1906.)

UNITED STATES—CONTRACTS—BOND OF CONTRACTOR—LIABILITY OF SURETY.

> A contract for the construction of lifeboats for the government provided that the general superintendent of the government might revoke the contract when sufficient cause existed for so doing, in which event the contractor should not be entitled to damages, and provided for payment of a specified sum per boat after the delivery of each boat, and that each boat before delivery should be inspected. The contractor executed a bond pursuant to Act Cong. Aug. 13, 1894, c. 280, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523], providing for the protection of persons furnishing materials and labor for the construction of public works. *Held*, that a subcontractor furnishing materials could not on the insolvency of the contractor recover on the bond either under the statute, relating only to the construction of public buildings and works, or at common law.

Submission of controversy on an agreed statement of facts by the United States, for the use of William Bell and another, against the Empire State Surety Company. Judgment for defendant in accordance with the terms of submission.

Argued before HIRSCHBERG, P. J., and WOODWARD, RICH, and MILLER, JJ.

Joseph G. Deane, for plaintiffs.

Hugo Hirsh (Ferd. W. Buermeyer, on the brief), for defendant.

HIRSCHBERG, P. J.    In the spring or summer of 1903 a contract was entered into between the general superintendent of the United States Life Saving Service and a corporation known as the Marine Construction & Dry Dock Company of New York for the construction by the latter of 15 self-righting and self-bailing lifeboats for the United States government. The contract provided that the general superintendent should have the power to annul and revoke it whenever in his judgment good and sufficient cause existed for so doing, in which event the company should not be entitled to anything on the ground of damages sustained thereby. It further provided for the payment from the treasury of the United States to the company of the sum of $2,175 per boat after the delivery of each boat on the days stipulated in the contract, and it further provided that each boat before delivery should be first duly inspected by the properly authorized inspecting officer or officers and found satisfactory. At the time of the execution of the contract referred to, the defendant herein, a domestic surety corporation, executed a bond with the Marine Construction & Dry Dock Company, as surety for the latter, conditioned in the sum of $15,000, to be paid to the United States in default of the full and complete execution of the contract, and guarantying prompt payment for all labor and materials by the contractor. On the 20th of August, 1903, the plaintiffs, as subcontractors, agreed to, and afterwards did, furnish to the Marine Construction & Dry Dock Company certain materials for the construction of the lifeboats, or some of them. The company thereafter became insolvent, a receiver was appointed, and the plaintiffs have been unable to collect the sum of $2,956.37, due them, with inter-

est, as such subcontractors. The question presented on this submission is whether they may collect the money from the defendant on the bond. The bond was given pursuant to an act of Congress passed August 13, 1894 (chapter 280, 28 Stat. 278 [U. S. Comp. St. 1901, p. 2523]), entitled as follows: "An act for the protection of persons furnishing materials and labor for the construction of public works." This act provides, in substance, that any person entering into a formal contract with the United States for the construction of any public building or the prosecution or completion of any public work, or for repairs on any public building or any public work, shall be required, before commencing such work, to execute a bond to secure prompt payment to all persons supplying him with labor and materials. The act further provides that any person so supplying labor and materials, who shall not have been paid, may bring a suit in the name of the United States for his use against the contractor and sureties, under certain conditions, which have been complied with in this particular instance.

The question presented, like many other law questions, is so close that it probably might be well decided either way; but I have reached the conclusion that the materials furnished by the plaintiffs under their subcontract do not come within the purview of the act in question. Neither the plaintiffs nor the company were engaged in the construction of any public building or the prosecution or completion of any public work, within the meaning of the law. The plaintiffs were furnishing materials to a private corporation, to be used in the construction of boats which afterwards might or might not become the property of the United States government. If they should not be found satisfactory on inspection, the government would have the right to refuse them. Indeed, there is nothing in the submission tending to indicate that any one of the boats has ever been finished and inspected and delivered, or that any one of them ever will be. The plaintiffs were not engaged in a public work in any other sense than the owner of a factory would be, who was making stationery for a customer who chanced to have a contract with the government to supply it with stationery. Had a contractor agreed to furnish the government with arms, it could hardly be claimed that the law protected the wages of the operatives in the arsenals where the weapons might be manufactured. It is obvious that if the construction of the statute for which the plaintiffs contend is to prevail, then it covers every kind of contract which the government can make for any purpose, and the words of the title, "furnishing materials and labor for the construction of public works," have no significance or restrictive meaning. The object of the act is fully subserved by construing it to relate to the construction of public buildings and the prosecution and completion of public works, in the sense that they belong to and are the property of the public, and to repairs thereof. As mechanics, laborers, and materialmen would be unable to acquire a lien upon federal property, the statute furnishes them an adequate means of securing the collection of their claims against the governmental contractor through the agency of the United States. Such agency, however, is wholly unnecessary in the case of mechanics, laborers, and materialmen who acquire claims in the construction of

specific movable articles which are not government property or upon government property, and the whole title to which remains in the contractor until completion and acceptance by the government, and so remains subject to the enforcement of the state lien laws.

The views herein expressed are in accord with the opinion of the Attorney General of the United States, at the request of the Secretary of the Navy, on June 21, 1900, to the effect that the act in question does not relate or refer to a contract for the construction of a naval vessel.   See 23 Op. Attys. Gen. 174.

If the case presented is not one contemplated by the statute, the mere giving of the bond will not entitle the plaintiffs to sue upon it.   At common law an obligation to which a person is neither a party nor a privy furnishes no protection or security to that person, and the obligation to such person, if any there be, must rest upon some legislative enactment.   Wilson v. Webber, 92 Hun, 466, 469, 36 N. Y. Supp. 550, affirmed 157 N. Y. 693, 51 N. E. 1094; Gifford v. Corrigan, 117 N. Y. 257, 22 N. E. 756, 6 L. R. A. 610, 15 Am. St. Rep. 508; Townsend v. Rackham, 143 N. Y. 516, 38 N. E. 731.

It follows that judgment should be rendered in favor of the defendant, in accordance with the terms of the submission, without costs. All concur.

---

### In re WESTCHESTER TRUST CO.

(Supreme Court, Appellate Division, Second Department.   July 24, 1906.)

CORPORATIONS—ELECTION OF DIRECTORS.

> The filing of a resolution of a corporation reducing the number of directors, which filing is required by Stock Corporation Law, Laws 1892, p. 1829, c. 688, § 21, relates back to the meeting at which such resolution was passed, and hence, where the number of directors was reduced, an election the next day in accordance therewith was regular, although the resolution reducing the number was not filed until later.

Appeal from Special Term, Westchester County.