## Richmond.

PENN IRON COMPANY, LIMITED, v. WILLIAM R. TRIGG COM-
PANY AND OTHERS.

February 7, 1907.

Absent, Cardwell, J.

1. PARTIES—*Penal Bond Payable to United States—Action by Benefi-
ciary.*—A penal bond given to the United States, with condition
·to faithfully perform a contract to construct a seagoing suction
dredge, and to promptly make full payment to all persons sup-
plying labor and materials for the prosecution of the work there-
on is the property of the United States, and no action can be
brought thereon by any beneficiary under it in the name of the
United States. No such action could be brought except as au-
thorized by some act of Congress, and there is none. The act of
Congress of August 13, 1894, relating to construction of public
buildings and the prosecution and completion of public works
does not apply to this case, as the construction of a seagoing
suction dredge is not a "public work" within the meaning of the
act.

.Error to judgment of the Circuit Court of the city of Rich-
mond in action of debt. Judgment for the defendant. Plaintiff
assigns error.

*Affirmed.*

The opinion states the case.

*George Bryan* and *Meredith & Cocke,* for the plaintiff in
error.

*J. J. Leake* and *Christian & Christian,* for the defendants in
error.

HARRISON, J., delivered the opinion of the Court.

In September, 1901, the William R. Trigg Company, a corporation engaged in the construction and equipment of ships, entered into a contract with the United States of America, by which it undertook to construct and equip a certain seagoing suction dredge; and at the same time executed a bond in the penalty of $60,000, with the Virginia Trust Company as surety, payable to the United States of America, conditioned for the faithful performance by it of the covenants, conditions and agreements of such contract; and, further, that it should promptly make full payment to all persons supplying it labor or materials in the prosecution of the work provided for in the contract.

The Penn Iron Company, Limited, claiming to have furnished materials to the value of $476.78, which were used in the construction of the seagoing suction dredge mentioned, has instituted this action of debt in the name of the United States of America, suing for the benefit and at the cost of the Penn Iron Company, Limited, against the W. R. Trigg Company and its surety, the Virginia Trust Company, upon the bond for $60,000, to enforce the payment of its claim.

Demurrers, identical in substance, were filed to the declaration by each of the defendants, and upon consideration thereof the suit was dismissed. This action of the Circuit Court is assigned as error.

In the view we take of this case it is not necessary to consider all of the questions discussed by counsel. Viewing the bond sued on as a common law bond—that is, as a bond not executed pursuant to any statute—it belongs to, and is the property of, the United States, and no suit can be brought on it by any beneficiary under it, in the name of the United States, for his benefit, unless some Federal statute authorizes it.

In *Carmichael* v. *Moore,* 88 N. C. 29, which was a suit upon an official bond payable to the state, the court held that the person injured by the neglect of the officer could not sue upon the bond, except by virtue of the authority contained in the

statute, saying: "The bond sued on is the property of the state, and the only authority the plaintiffs have for putting it in suit is that which is specially given in the statute, and which in terms is limited to a suit brought in the name of the state."

In the case of the corporation of *Washington* v. *Young,* 10 Wheat. 406, 6 L. Ed. 352, it was held that a person entitled to a prize ticket had no right to bring a suit for the prize against the manager of the lottery upon his bond, executed to the corporation, conditioned to truly execute the duty and authority vested in him by the authority of the ordinance of the corporation without its consent.   Chief Justice Marshall, delivering the opinion of the court, said: "No person who is not the proprietor of an obligation can have a legal right to put it in suit, unless such right be given by the Legislature; and no person can be authorized to use the name of another without his assent given in fact or by legal intendment."   See also *Com'th* v. *Fugate,* 1 T. B. Monroe (Ky.) 1; *Com'th* v. *Hatch,* 5 Mass. 591.

The numerous statutes, both state and federal, authorizing suits of this character by parties interested, would seem to furnish conclusive evidence of their necessity; otherwise the lawmaker has been engaged in a very idle ceremony.

In the light of the authorities cited the sole question to be determined here is: Did the plaintiff have authority from the sovereign to whom this bond is payable to institute this action upon it?

The plaintiff relies for its authority to put the bond in suit upon the act of Congress, approved August 13, 1894, which provides that any person entering into a formal contract with the United States for the construction of any "public building, or the prosecution and completion of any public work," shall be required before commencing such work to execute the usual bond, with good and sufficient sureties, with the additional obligations that such contractor or contractors shall promptly make payment to all persons supplying him or them labor and materials in the prosecution of the work provided for in such con-

tract; and any person or persons making application therefor, and furnishing affidavit to the department under the direction of which said work is being, or has been, prosecuted, that labor or materials for the prosecution of such work has been supplied him or them, and payment for which has not been made, shall be furnished with a certified copy of said contract and bond, upon which said person or persons supplying such labor and materials shall have a right of action, and shall be authorized to bring suit in the name of the United States for his or their use and benefit against said contractor and sureties, and to prosecute the same to final judgment and execution, provided that such action and its prosecution shall involve the United States in no expense. Act Congress August 13, 1894, chapter 280, 28 Stat. 278 (U. S. Comp. St., 1901, page 2523).

It is clear from this statute that this suit cannot be maintained under its provisions, unless the bond sued on was given to secure the performance of a contract for the construction of a "public building," or the prosecution and completion of some "public work."

The record shows that the bond sued on was to secure the performance of a contract for the construction and equipment of a seagoing vessel. The question is, therefore, whether the construction of such a vessel is the prosecution of a public work in the sense that the term is used in the statute. Upon this question there appears to have been but little judicial utterance.

The Am. & Eng. Ency. of Law (2d Ed.), Volume XXIII, page 459, in defining the term "public works," says: "This term includes all fixed works constructed for public use, as railways, docks, canals, waterworks, roads, etc." This definition is given by the Century Dictionary, and is approved in *Ellis* v. *Grand Rapids,* 123 Mich. 567, 82 N. W. 244, and *Winters* v. *Duluth,* 82 Minn. 130, 84 N. W. 788. The idea that "public works" include only "fixed works" would seem necessarily to exclude a seagoing vessel.

Attorney-General Griggs, in an official opinion given to the Secretary of the Navy on June 21, 1900, holds that the statute under consideration relates to contracts for the construction of public buildings, fortifications, river and harbor improvements, etc., which can only be erected upon land, and are commonly understood under the designation "public works"; and that the act does not refer to contracts for the construction of naval vessels. In referring to the statute he says: "The contracts there referred to relate to the construction of public buildings and the prosecution and completion of public works and to repairs upon public buildings or public works. The object of the act was to afford a better method for enforcing against the contractor the claims of laborers and material men who had done work or furnished material upon property actually belonging to the United States, such as public buildings, which could only. be erected upon land to which the United States had acquired a complete title; fortifications, river and harbor improvements, and such other things as are commonly understood under the designation of 'public works.' Of course, no mechanics' or laborers' lien would attach by operation of any state statute to property belonging to the United States on account of work done or materials furnished for improvements thereon. The statute of 1894 intended, in a measure, to remedy the defect in the means of collection at the disposal of labors and material men against contractors upon such works. No such reason applies to cases of the construction of a specific article not attached to the soil, the title of which is (not) in the United States, but which is a mere movable article, the whole title to which remains in the contractor until its completion and acceptance by the government. I assume it to be correct to say that if a state law authorized a lien for labor or materials furnished in the construction of a vessel under this form of contract it would not be void or unenforcable because the vessel was in process of construction for the United States, the property to the same

562   PENN. IRON CO. v. TRIGG CO., 106 VA. 557.

not yet having passed to the government, and such liens could therefore be effectively enforced."

This opinion draws the distinction between a "movable article," such as a vessel, and fixed public works, such as fortifications, river and harbor improvements, etc., and is thus in harmony with the definition of the term "public works" given by the authorities cited.

Plaintiff in error relies on the case of *United States* v. *Jefferson* (D. C.), 60 Fed. 736. That was an indictment against the master of a steam snagboat for unlawfully requiring laborers, employed in removing obstructions to navigation in rivers and harbors, to work more than eight hours in a single day, in violation of the act of Congress. The district judge, in charging the jury, said that the statute does not apply to all persons employed in the government service; that to bring the case within the inhibition of the statute the evidence must show that the men were employed upon some "public work" in which the government was engaged; that the removal of obstructions to navigation in rivers and harbors of the country was "public work" of the government; and that men employed in removing such obstructions were employed upon "public works," and hence could not be required to work more than eight hours per day. In holding that the removal of obstructions to navigation from rivers and harbors of the country is a part of the public work of the government this authority is in harmony with the opinion of Attorney-General Griggs, *supra,* which includes "river and harbor improvements" among those things held by him to be "public works." It can hardly be regarded as authority for the proposition that the construction of a seagoing vessel by private parties for the United States is the prosecution of a public work.

The plaintiff in error further relies on the case of *United States* v. *Perth Amboy Shipbuilding Co.* (D. C.), 137 Fed. 689. In that case the district judge does remark that "the meaning of the words 'public work' in the act is broader and more comprehensive than the dictionary meaning given to 'public works';

that public work is susceptible of application to any constructive work of a public character, and is not limited to fixed works. The statute should be liberally construed to accomplish its purpose." The learned judge, however, indicates doubt of the view expressed, for he immediately adds: "But without further discussion of the point it is quite sufficient to say that whether the foregoing view is correct or not the defendants are estopped from setting up such defense."

Our conclusion is that the act of Congress approved August 13, 1894, under the most liberal construction that can be given to it, cannot be held to have intended that the seagoing suction dredge mentioned in the bonds sued on should be included in the class of "public works" contemplated by the statute. If the building of such a vessel was the character of public work intended by the statute it would follow logically that the manufacture of clothing for the army, the making of horse-shoes, or the manufacture of any other article of personal property to be used by the government, is the prosecution of a "public work." We are of opinion that the reasonable construction of the statute is that put upon it by Attorney-General Griggs, that the act does not contemplate contracts for the construction of vessels or any movable article, but relates to contracts for the construction of public buildings and fixed improvements, such as fortifications, river and harbor improvements, etc.

It follows from what has been said that this action cannot be maintained by virtue of the provisions of the act of August 13, 1894, and, therefore, the judgment of the Circuit Court sustaining the demurrers must be affirmed.

*Affirmed.*