**IRWIN et al. v. UNITED STATES, to Use of NOLAND CO., Inc.**

**No. 7784.**

United States Court of Appeals for the District of Columbia.

Argued May 7, 1941.

Decided July 28, 1941.

Amasa M. Holcombe and Prentice E. Edrington, both of Washington, D. C., for appellants.

Bynum E. Hinton and Alexander M. Heron, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

GRONER, C. J.

In December, 1936, the United States entered into a contract with appellant, Irwin & Leighton, for the construction of a library building at Howard University in the District of Columbia. A performance bond and a payment bond were required in accordance with the Miller Act.[1] The surety on the bonds was the

---

[1] 40 U.S.C.A. § 270a:

"(a) Before any contract, exceeding $2,000 in amount, for the construction, alteration, or repair of any public building or public work of the United States is awarded to any person, such person shall furnish to the United States the following bonds, which shall become binding upon the award of the contract to such person, who is hereinafter designated as 'contractor':

"(1) A performance bond with a surety or sureties satisfactory to the officer awarding such contract, and in such amount as he shall deem adequate, for the protection of the United States.

"(2) A payment bond with a surety or sureties satisfactory to such officer for the protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person. Whenever the total amount payable by the terms of the contract shall be not more than $1,000,000 the said payment bond shall be in a sum of one-half the total amount payable by the terms of the contract. Whenever the total amount payable by the terms of the contract shall be more than $1,000,000 and not more than $5,000,000, the said payment bond shall be in a sum of 40 per centum of the total amount payable by the terms of the contract. Whenever the total amount payable by the terms of the con-

tract shall be more than $5,000,000 the said payment bond shall be in the sum of $2,500,000.

\* \* \*

"(c) Nothing in this section shall be construed to limit the authority of any contracting officer to require a performance bond or other security in addition to those, or in cases other than the cases specified in subsection (a) of this section."

§ 270b:

"(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: Provided, however, That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving

other appellant, United States Guarantee Company. Irwin & Leighton completed the building in accordance with the contract and paid all subcontractors in full. Appellee, Noland Company, Inc., however, had furnished materials on the order of a subcontractor, for which it was not paid. Accordingly, it brought this action on the payment bond in the name of the United States. The general contractor and the surety moved to dismiss on the ground that the university building was not a "public building or public work of the United States" within the meaning of the Miller Act, under which the suit was brought. The trial court was of the opinion that it was the intention of Congress to include within the provisions of the Miller Act contracts for work such as the one involved in the suit, and rejected the motion. We granted a special appeal.

The established and admitted facts are as follows: By Act of February 14, 1931,[2] Congress authorized the contruction at Howard University of a library building to cost not to exceed $800,000, of which sum $400,000 was made immediately available. A small part of the latter sum was used for architectural fees, but shortly after the first election of President Roosevelt the original appropriation was "impounded" and no steps were taken to erect the library until after the enactment of the National Industrial Recovery Act, at which time the Administrator of Public Works (the Secretary of the Interior), with the approval of the President, allocated sufficient funds for the construction of the building under a section of that Act authorizing a program of public works projects.[3] The plans and specifications were drawn by an architect selected by Howard University,

and were approved by the Secretary. The contract was signed by the Assistant Secretary, and the funds were expended under the direction of the Administrator of Public Works.

The National Industrial Recovery Act contained no requirement for a bond to secure the faithful performance of contracts made pursuant to its provisions. But the Secretary, in preparing the contract and in his instructions to bidders, gave notice that two bonds would be required—one, a "performance bond" and the other, a "payment bond", both running to the United States "as required by the Act of Congress approved August 24, 1935" (the Miller Act, supra, footnote 1). When the suit in this case was instituted in the United States District Court for the District of Columbia, it was brought in the name of the United States and was expressly based on the provisions of the Miller Act. The main question, then, for decision is whether the bond sued upon was authorized to be demanded of the contractor under the provisions of that Act.

In Maiatico Construction Co. v. United States, 65 App.D.C. 62, 79 F.2d 418, certiorari denied, 296 U.S. 649, 56 S.Ct. 309, 80 L.Ed. 462, we dealt with a state of facts substantially identical with those we have narrated. That case, as this, involved a contract made by the United States for the construction of buildings for Howard University. There, as here, the government had appropriated the necessary funds. We held there that an unpaid materialman could not recover on a contractor's bond executed under the Heard Act, 40 U.S.C.A. § 270. We said in the Maiatico case that Howard University is a private corporation; that its charter gives

---

written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelop addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized

by law to serve summons.

"(b) Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy in such suit, but no such suit shall be commenced after the expiration of one year after the date of final settlement of such contract. The United States shall not be liable for the payment of any costs or expenses of any such suit."

[2] 46 Stat. 1159.
[3] 48 Stat. 201, 40 U.S.C.A. § 402.

it all the rights and powers usually vested in private corporations, including the right to purchase and sell real estate and the right to contract and to sue and to be sued; that its buildings are erected on its own lands; and that its general funds, including a large endowment fund, are under its control and its financial affairs are subject to the supervision of the Secretary of the Interior *only* as to the expenditure of federal moneys appropriated for university purposes. On this state of facts we held that the generosity of the government in providing buildings for the university from time to time did not of itself change Howard University from a private into a public institution. As a private corporation, it was, of course, subject to all mechanic lien statutes of the District of Columbia. Accordingly, we held that a bond taken under the Heard Act, which applies exclusively to the construction of public buildings of the United States, would not sustain the claim of a materialman for supplies furnished to buildings privately owned.[4]

Unless, therefore, a fair construction of the Miller Act, which in 1935 superseded the Heard Act, will justify a different result, as appellee insists it will, it follows that we must reverse the judgment of the court below.

The Heard Act, as has been often said, was passed in recognition of the inability of subcontractors to take liens upon the public property of the United States. Its practical effect was to substitute the required bond in place of the building on which the lien, in the case of non-public property, would attach. In 1935 bills were introduced in Congress for the purpose of enlarging this protection to subcontractors and supplymen in certain definite respects, resulting in the passage of the Miller Act. The purpose of the new Act was to relieve certain procedural troubles found to exist under the old Act and to shorten the period when, under that Act, suit might be instituted against the surety. To this end, the Miller Act provides a separate and direct right of action upon a bond called a payment bond, to be taken exclusively for the protection of laborers and materialmen, whereas the Heard Act required only one bond, primarily for the protection of the United States and secondarily for the pro-

tection of laborers and materialmen. The reasons and purpose of the change were stated by Congressman Dockweiler (H. R. 5054) as follows:

"The Heard Act as it stands today permits very substantial injustices to be done to laborers, materialmen, and subcontractors. There is only one bond written under that act, and it enures, respectively, to the benefit of the Government on the faithful performance of the contract, and to the benefit of the laborers and materialmen and subcontractors. But the right of the laborers, materialmen, and subcontractors is postponed to an unreasonable length of time. Action under it by the Federal Government must be awaited, on the faithful-performance bond, which action can be brought at any time within 6 months after the full and final completion of the contract; and only after the end of that time can laborers, subcontractors, and materialmen have any relief under the bond.

\* \* \*

"All that the materialmen, subcontractors, and laborers desire is a separate and direct right of action upon a separate bond."

The Report of the House Judiciary Committee (No. 1263, 74th Cong., 1st Sess.) is of precisely the same tenor. All of the hearings and discussion centered around an effort to correct a purely procedural question. Accordingly, we think enough has been said to show that the Miller Act adds nothing over the Heard Act to appellee's rights. If appellee may maintain this action under the provisions of the Miller Act, it could in the same circumstances have maintained it under the provisions of the Heard Act prior to its repeal. In either case, the question would be whether an action could be maintained on a bond taken by the United States to secure the payment of laborers and materialmen in the construction of a building which was not a public building of the United States.

But appellee argues that when, in the passage of the National Industrial Recovery Act, Congress authorized the Administrator to prepare a "program of public works" to include "any projects of the character heretofore constructed or carried on either directly by public authority or with public aid to serve the interests

---

[4] United States v. Faircloth, 49 App. D.C. 323, 265 F. 963; United States v. Empire State Surety Co., 114 App.Div. 755, 100 N.Y.S. 247; Penn Iron Co. v. Trigg Co., 106 Va. 557, 56 S.E. 329.

of the general public", it thereby declared such work as is involved in the present contract a "public work of the United States" and brought the instant contract within the provisions of the Act. But we think this does not follow. Assuming, for the purpose at hand, that the building of a library at Howard University involves the extension of a project heretofore carried on with public aid to serve the interests of the general public, it would be going very far to say that, by including it within a "public works" program, Congress meant to change the well established definition of public buildings and works as those terms have been invariably understood in statutes requiring security for the performance of contracts made with the United States. And that Congress had no such thought or intent abundantly appears, we think, in considering the other items included in the "program", for these embrace loans for the construction or completion of hospitals, the operation of which is partly financed from public funds, and likewise projects "of any character heretofore eligible for loans under subsection (a) of Section 605b of Title 15". That section includes projects of states, municipalities, political subdivisions of states, public agencies of states, public corporations, boards, and commissions, and private corporations engaged in constructing bridges, tunnels, docks, viaducts, water works, canals, and markets devoted to public use and self-liquidating in character. As the result of this, the United States have loaned money to municipalities to build electric light plants and water works, and the Administrator has supervised the contracts for carrying them out.

The Miller Act requires that bonds be taken only for contracts involving the construction of public buildings or public works *of the United States*. Obviously, it was not intended by Congress to include in that category municipal improvements or toll bridges built by private corporations, both of which are included in the designation "public works". Therefore, to hold, under these circumstances that the use in the National Industrial Recovery Act of the words "public works" was intended as a definition to be applied in all cases and to all statutes (the effect of which would be to transform what had always been considered nongovernmental into governmental) would be, we think, wholly unjustifiable. The fact is that in the case we are considering the Secretary overlooked the fact that Howard University is a private corporation and accordingly required a bond under the Miller Act. And in this respect he was clearly in error. It is obvious, therefore, that the case we have is precisely the case we disposed of in Maiatico Construction Co. v. United States, supra, and there we said that if the bond was not one of the nature contemplated by the statute, no rights accrued to the furnisher of material for the reason that in such a case the Act did not authorize its execution.

Appellee, however, challenges this conclusion on other grounds than those we have discussed, and insists, first, that the express language of the Miller Act authorizes the taking of bonds in contracts other than those involving public works or public buildings; second, that whether this is true or not, the action of the Secretary is not subject to judicial review; and, third, that the bond taken in the present case is sufficient in its terms to permit recovery as upon a private obligation without respect to the statutes or the authority of the Secretary.

The first contention is based on subsection (c) in the Miller Act (supra, footnote 1), which reads: "Nothing in this section shall be construed to limit the authority of any contracting officer to require a performance bond or other security in addition to those, or in cases other than the cases specified in subsection (a) of this section."

Counsels' only comment as to this section is that from its inclusion in the statute "it is apparent that care has been taken in the drafting of the statute to remove any doubt as to the authority of the contracting officer in what might otherwise have been questionable cases". It is not quite clear just what is meant by this statement, but it seems to us that the purpose of subsection (c), which does not appear in the Heard Act, was merely to insure that whatever authority the Secretary had prior to the passage of the Miller Act to require security of persons dealing with the United States in matters not covered by the precise terms of that Act, was not taken away by anything contained in the Act. Very clearly, subsection (c) does not of itself authorize any bonds to be taken under the Miller Act. Whatever rights it created or preserved, if any, were extrane-

ous to those embraced within the terms of that Act, and yet, as we have pointed out, the Secretary took the bond here in suit under the Miller Act and in the most explicit fashion notified bidders on the work that the contract and bonds were to be executed in accordance with its terms; and that this was understood by appellee is apparent from the fact that the suit is expressly brought under that Act.

■ And so we have an action on a bond running to the United States and taken without authority of law and on which a third party seeks a recovery against a nonresident surety in a Federal Court in the District of Columbia. For reasons already stated and more fully set forth in the Maiatico case, we think the action is not maintainable.

■ Second. The argument that the action of the Secretary is not subject to judicial review is based upon the opinion of the Supreme Court in Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L. Ed. 1108. In that case this court granted an injunction on the ground that the interpretation of the Secretary of Labor of the word "locality" went so far beyond any possible proper application of the word as to defeat its meaning and to constitute an attempt arbitrarily to destroy the statutory mandate. The Supreme Court reversed and held that the complaining corporations in that case—bidders for government contracts—had no legal standing to question the Secretary's determination, and that only the United States could challenge any abuse of authority. There is nothing in the Miller Act which in any sense par-

allels the situation which existed in the Lukens case, and there is nothing, in our view, in the opinion in the Lukens case which has any relation to the questions in the present case. In this action appellee sought to obtain a right under a. bond executed pursuant to a statute of the United States. If, as we hold, no authority was granted the Secretary to require such a bond, there is certainly nothing in the Lukens case which destroys the right of a person sued on the bond to make that defense.

■■ Third. Appellee argues that there is no valid reason why it may not recover upon the bond as a private obligation. There are two answers to this contention: one, that the complaint counts specifically' upon a statutory bond; the other, that a suit in the name of the United States cannot be brought upon a voluntary bond given to secure the performance of a contract with the United States, unless some federal statute authorizes it. United States v. Faircloth, 49 App.D.C. 323, 265 F. 963; Penn Iron Co. v. Trigg Co., 106 Va. 557, 56 S.E. 329, writ of error dismissed, 215 U.S. 611, 30 S.Ct. 397, 54 L.Ed. 348.

We are by no means unmindful of the strong equities of appellee's case, and we would, if we could, enforce them. But since, as we view the case, to do so would involve the setting aside of an established rule of law and the introduction of uncertainty and doubt in its place, we are, as we think, impelled to reverse the judgment below and remand the case to the District Court for a new trial in accordance with this opinion.

Reversed.