186 So. 487

## STATE ex rel. WILKINSON v. MURPHY.

### 6 Div. 431.

Supreme Court of Alabama.

Jan. 31, 1939.

Rehearing Denied Feb. 21, 1939.

334

Horace C. Wilkinson, of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., Marvin Woodall, D. K. McKamy, Benj. Leader, John D. Hill, Jack Crenshaw, Sp. Asst. Attys. Gen., and Thos. S. Lawson, Wm. H. Loeb, and Silas C. Garrett, 3d, Asst. Attys. Gen., for appellee and intervener.

GARDNER, Justice.

The quo warranto proceeding is rested upon the theory that the Alabama Alcoholic Beverage Control Act (General Acts, Extra Session 1936–37, page 40) is void as violative of section 93 of our State Constitution, the here material provisions of which read as follows: "The state shall not engage in works of internal improvement, nor lend money or its credit in aid of such; nor shall the state be interested in any private or corporate enterprise, or lend money or its credit to any individual, association, or corporation."

The courts, in the exercise of their power to annul a statute which contravenes the organic law, have uniformly recognized that the power is a delicate one, and to be used with great caution. And it must be borne in mind also that legislative power is not derived from either the State or Federal Constitution. These are only limitations upon power. Apart from the limitations imposed by these fundamental charters of government, the power of the legislature has no bounds, and is as plenary as that of the British Parliament.

Or to state it differently, all that the legislature is not forbidden to do by the organic law, state or federal, it has full competency to do. And in passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a co-ordinate branch of the government. All of which is embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond a reasonable doubt that it is violative of the fundamental law. Gray v. Johnson, 235 Ala. 405, 179 So. 221; Walden v. City of Montgomery, 214 Ala. 409, 108 So. 231; Miller v. Marx, 55 Ala. 322.

Relator insists that the term "works of internal improvement" employed in section 93 of the Constitution, refers to a broad principle as to the State's engagement in trade and commerce, and not to any particular species of internal improvement, and that the system of State liquor stores established by the Act here in question constitutes a work of internal improvement within the meaning of section 93 of the Constitution thus interpreted. Or, if not within the meaning of that term, that the establishment of State liquor stores is violative of the succeeding phrase "nor shall the state be interested in any private * * * enterprise."

Briefs for the respective parties to this litigation contain interesting and instructive discussions of the causes leading to the inclusion of these provisions in our organic law. It is a regrettable part of the history of our State, and no detailed consideration of those causes need here be given. The unfortunate experience, both as to the banking business and the lending of the State's credit to railroad construction, is well known to all. Relator's brief quotes liberally from Government Experimentations in Business, pages 58–90, by Prof. Warren M. Persons, wherein much detail information on this subject may be found. See, also, Mayor, etc., Wetumpka v. Wetumpka Wharf Co., 63 Ala. 611, and Garland v. Board of Revenue of Montgomery, 87 Ala. 223, 6 So. 402.

We think it clear enough these experiences resulted in the inhibitions of what is now section 93 of our Constitution. Like reasons motivated the inclusion in our organic law of what is now section 253, Constitution of 1901, prohibiting the State from becoming a stockholder in any bank.

Defendant insists that by reason of these historic facts the words "works of internal improvement" in section 93, supra, should be construed as having reference only to channels of trade and commerce,

such as canals, turnpikes, railroads, and the like, citing Shenandoah Lime Co. v. Mann, 115 Va. 865, 80 S.E. 753, Ann.Cas. 1915C, 973.

But the language of our Constitution is broad and comprehensive. There are no restrictions or limitations, and we are unwilling to so interpret this provision of our Constitution so as to attach such an exception thereto. We are inclined, however, to agree with defendant that these words have reference to improvements of a more or less fixed and permanent character. Ellis v. Common Council, 123 Mich. 567, 82 N.W. 244; Bird v. Common Council, 148 Mich. 71, 111 N.W. 860; In re Internal Improvements, 18 Colo. 317, 32 P. 611; State v. Dammann, Wis., 280 N.W. 698; Shenandoah Lime Co. v. Mann, 115 Va. 865, 80 S.E. 753, Ann.Cas.1915c, 973; Penn Iron Co. v. Wm. R. Trigg Co., 106 Va. 557, 56 S.E. 329; Ellis v. United States, 206 U.S. 246, 27 S.Ct. 600, 51 L.Ed. 1047, 11 Ann.Cas. 589.

■ We think it clear, therefore, that the operation of the State liquor stores would not come within the influence of the term "works of internal improvement."

■ Defendant further argues that the words, "nor shall the state be interested in any private * * * enterprise," mean merely that the State shall not be interested with individuals, associations or corporations in the operation of a private or corporate enterprise, and was not intended to prevent the State itself from engaging in a private enterprise.

But we think this too narrow a construction of the Constitution, and clearly out of harmony with the motivating cause of the inclusion of this prohibition in our organic law. The interest referred to is a pecuniary interest in any private or corporate enterprise, and this prohibition was, we think inserted in our organic law as a limitation upon the power of the legislature to again place our State in business enterprises and in competition with private individuals or corporations; or to undertake those things which ordinarily might, in human experience, be expected to be undertaken for profit or benefit to private promoters.

And we are of the opinion it is quite broad enough to embrace a business operated solely by the State for trade and traffic.

The sole remaining question, therefore, is whether or not the operation of the State liquor stores, as provided by this Act, is within the influence of this term as used in section 93 of our Constitution.

The numerous authorities noted by relator upon the question at hand have been read and considered with care in the light of the ingenuous argument in his briefs. Among them are the following: Rippe v. Becker, 56 Minn. 100, 57 N.W. 331, 22 L.R.A. 857.; State v. Froehlich, 115 Wis. 32, 91 N.W. 115, 58 L.R.A. 757, 95 Am.St.Rep. 894; Traver v. Merrick County, 14 Neb. 327, 15 N.W. 690, 45 Am.Rep. 111; Minnesota Sugar Co. v. Iverson, 91 Minn. 30, 97 N.W. 454; State ex rel. Coleman v. Kelly, 71 Kan. 811, 81 P. 450, 70 L.R.A. 450, 6 Ann.Cas. 298; People ex rel. Bay City v. State Treasurer, 23 Mich. 499, 506; Attorney General v. Pingree, 120 Mich. 550, 79 N.W. 814, 46 L.R.A. 407; Northwestern Tel. Exch. Co. v. Chicago R. Co., 76 Minn. 334, 79 N.W. 315; In re Senate Resolution, 12 Colo. 287, 21 P. 484; Sundquist v. Fraser, 154 Minn. 371, 191 N.W. 931; State v. Donald, 160 Wis. 21, 151 N.W. 331; Dodge v. Mission Twp., 8 Cir., 107 F. 827, 54 L.R.A. 242; Ohio v. Helvering, 292 U. S. 360, 54 S.Ct. 725, 78 L.Ed. 1307; Sheppard v. Dowling, 127 Ala. 1, 28 So. 791, 85 Am.St.Rep. 68; State Docks Comm. v. Barnes, 225 Ala. 403, 143 So. 581; Lipinski v. Gould, 173 Minn. 559, 218 N.W. 123, 730; In re Opinion of Justices, 118 Me. 503, 106 A. 865; In re Opinion of the Justices, In re Municipal Fuel Plants, 182 Mass. 605, 66 N.E. 25, 60 L.R.A. 592; Union Ice & Coal Co. v. Ruston, 135 La. 898, 66 So. 262, L.R.A.1915B, 859, Ann. Cas.1916C, 1274; Opinion of Justices, 211 Mass. 624, 98 N.E. 611, 42 L.R.A.,N.S., 221; Hill v. Rae, 52 Mont. 378, 158 P. 826, L.R.A.1917A, 495, Ann.Cas.1917E, 210; White Eagle Oil & Refining Co. v. Gunderson, 48 S.D. 608, 205 N.W. 614, 43 A.L.R. 397; Town of Athens v. Miller, 190 Ala. 82, 66 So. 702; Southern Ry. Co. v. Hartsborne, 162 Ala. 491, 50 So. 139.

A discussion of these several authorities would of course extend this opinion to undue length. Suffice it to say that in large part they deal with a character of business in no manner related to the question of intoxicating liquors. We have no quarrel with any of them. A few illustrations will serve the purpose. The Rippe Case, supra, involved the question as to whether or not the construction of a state grain elevator was within the constitutional prohibition against the state engaging in works of internal improvement. The answer was that

it was so prohibited. But, at the very outset, the court in the opinion said, 57 N.W. 333: "It seems to us as plain as words can make it—too plain to admit of argument—that the provisions of this act have no relation or reference whatever to the exercise of the police power to regulate the 'grain elevator' business." Accepting this statement for its face value, it is clear enough the holding is of little value on the question before us.

Likewise as to the construction of a street railroad involved in Attorney General v. Pingree, supra.

Relator lays some stress upon State v. Froehlich, 115 Wis. 32, 91 N.W. 115, 58 L.R.A. 757, 95 Am.St.Rep. 894, where it was held that the construction and strengthening of a levee was within the constitutional prohibition against the state engaging in internal improvement. That case is authority for the view that the mere fact of a resulting benefit to the public does not suffice to take the venture from without the influence of such a constitutional prohibition, and that the further fact the levee so strengthened might incidentally avert possible peril to life does not make it other than a work of internal improvement. The opinion points out that a part of the levee system was the result of private enterprise, and that [page 117] "even though there be some slight measure of general governmental purpose likely to be accomplished by such structures, it is so indirect and relatively so slight that it cannot take the work out of the category to which it so obviously belongs." That authority also recognizes that some limitation of the broad meaning of such a constitutional prohibition against works of internal improvement was intended, notably the state capitol, university, hospitals, penitentiaries, schools for blind, deaf and feeble minded, and the like. But we find nothing in the opinion which bears any analogy to the Act here considered.

The case of State v. Kelly, 71 Kan. 811, 81 P. 450, 70 L.R.A. 450, 6 Ann.Cas. 298, was to the effect that the construction, operation and maintenance of an oil refinery for storage of oil and the marketing of the same constituted a work of internal improvement, contrary to the constitution of Kansas, similar in this regard to our own. We find no fault with that decision.

Some of the cited cases deal with businesses rather than internal improvements. That of Lipinski v. Gould, 173 Minn. 559, 218 N.W. 123, 730, relates to the purchase and resale of fish. We might well agree. But the opinion of the Minnesota court in that case makes the distinction we have in mind, wherein it is said [page 124]: "If the class of activities designated in the Constitution as 'works of internal improvements' were to be extended to include operations carried on by the state in its governmental capacity for the purpose of promoting the propagation of fish and preserving them as a permanent source of food supply, it would also include various other operations carried on by the state, among them those carried on through the agricultural department for guarding against and eradicating plant diseases and for improving the quality and increasing the yield of agricultural products. In our opinion the prohibition against engaging in 'works of internal improvements' was not intended to and does not prohibit such governmental activities."

Hill v. Rae, 52 Mont. 378, 158 P. 826, L.R.A.1917A, 495, Ann.Cas.1917E, 210, involved the question of farm loans, which were held to be a private enterprise. And White Eagle Oil & Ref. Co. v. Gunderson, 48 S.D. 608, 205 N.W. 614, 43 A.L.R. 397, involved the sale of gasoline as a commodity, with a like holding. In re Opinion of the Justices, In re Municipal Fuel Plants, 182 Mass. 605, 66 N.E. 25, concerned the sale of coal and wood, though the opinion indicates that in an emergency, as a scarcity of fuel, a different question would arise. But we forego further discussion of the authorities cited by relator. They deal with harmless and legitimate business enterprises, and are in a class wholly separate and apart from that of intoxicating liquors.

Perhaps no more striking illustration of the distinction between such businesses and that of the liquor traffic can be found than that in Cooley's Constitutional Limitations, page 850, which is here worthy of reproduction: "Perhaps there is no instance in which the power of the legislature to make such regulations as may destroy the value of property, without compensation to the owner, appears in a more striking light than in the case of these statutes. The trade in alcoholic drinks being lawful, and the capital employed in it being fully protected by law, the legislature then steps in, and by an enactment based on general reasons of public utility, annihilates the traffic, destroys altogether

the employment, and reduces to a nominal value the property on hand. Even the keeping of that for the purpose of sale becomes a criminal offense; and, without any change whatever in his own conduct or employment, the merchant of yesterday becomes the criminal of today, and the very building in which he lives and conducts the business which to that moment, was lawful becomes the subject of legal proceedings, if the statute shall so declare, and liable to be proceeded against for a forfeiture. A statute which can do this must be justified upon the highest reasons of public benefit; but, whether satisfactory or not, the reasons address themselves exclusively to the legislative wisdom."

Intoxicating liquors are not regarded as one of the ordinary commodities, and it is clear enough no such result, as above depicted, could be permitted to follow as to corn, cotton and other harmless and legitimate products. The argument against the constitutionality of this Act fails to take due account of this distinction, universally recognized, as disclosed by the following succinct statement of the law as found in 15 R.C.L. page 255: "The matter of regulating and restraining the liquor traffic, being referable to the police power—a power that has resided in the states since the beginning of the present system of government, and was not surrendered to the federal government—it is held that the entire business of manufacturing and selling liquor is completely within the control of the state, and is said so to exist as a correlative of the state's duty to support paupers, to protect the community from crime, and to confine and maintain the criminal, since the liquor traffic is one source of pauperism and crime. By virtue of this power the state may regulate the mode and manner and the circumstances under which this traffic may be conducted, and may surround the right to pursue it with such conditions, restrictions, and limitations as the legislature may deem proper, or it may prohibit it entirely. This is now a matter of universal recognition based on a long line of decisions both federal and state."

In Southern Express Co. v. Whittle, 194 Ala. 406, 69 So. 652, L.R.A.1916C, 278, this Court observed that intoxicating liquors are universally regarded as a proper subject for the application of the police power, and quoted approvingly the following from Freund on Police Power, section 204: "It is certainly the more conservative view to look upon the control of the liquor traffic as a means of protecting the community from crime and the financial burdens of pauperism." [Page 656.]

The opinion likewise quotes liberally from the decision of the United States Supreme Court, and the following is taken from Mugler v. Kansas, 123 U.S. 623, 8 S. Ct. 273, 31 L.Ed. 205, being here much in point [page 295]:

" 'The true question presented by these cases, and one which I am not disposed to evade, is whether the states have a right to prohibit the sale and consumption of an article of commerce which they believe to be pernicious in its effects, and the cause of disease, pauperism, and crime. * * * Without attempting to define what are the peculiar subjects or limits of this power, it may safely be affirmed that every law for the restraint or punishment of crime, for the preservation of the public peace, health, and morals, must come within the category. * * * It is not necessary, for the sake of justifying the state legislation now under consideration, to array the appalling statistics of misery, pauperism and crime which have their origin in the use or abuse of ardent spirits. The police power, which is exclusively in the states, is alone competent to the correction of these great evils, and all measures of restraint or prohibition necessary to effect the purpose are within the scope of that authority.' * * *

"But by whom, or by what authority, is it to be determined whether the manufacture of particular articles of drink, either for general use or for the personal use of the maker, will injuriously affect the public? Power to determine such questions, so as to bind all, must exist somewhere; else society will be at the mercy of the few, who, regarding only their own appetites or passions, may be willing to imperil the peace and security of the many, provided only they are permitted to do as they please. Under our system that power is lodged with the legislative branch of the government. It belongs to that department to exert what are known as the police powers of the state, and to determine, primarily, what measures are appropriate or needful for the protection of the public morals, the public health, or the public safety. It does not at all follow that every statute enacted ostensibly for the promotion of these ends is to be accepted

as a legitimate exertion of the police powers of the state. There are, of necessity, limits beyond which legislation cannot rightfully go. * * *

"Keeping in view these principles, as governing the relations of the judicial and legislative departments of government with each other, it is difficult to perceive any ground for the judiciary to declare that the prohibition by Kansas of the manufacture or sale, within her limits, of intoxicating liquors for general use there as a beverage, is not fairly adapted to the end of protecting the community against the evils which confessedly result from the excessive use of ardent spirts. There is no justification for holding that the state, under the guise merely of police regulations, is here aiming to deprive the citizen of his constitutional rights; for we cannot shut out of view the fact, within the knowledge of all, that the public health, the public morals, and the public safety, may be endangered by the *general use of intoxicating drinks;* nor the fact established by statistics accessible to every one, that the idleness, disorder, pauperism, and crime existing in the country, are, in some degree at least, traceable to this evil. If, therefore, a state deems the absolute prohibition of the manufacture and sale within her limits, of intoxicating liquors, for other than medical, scientific, and mechanical purposes, to be necessary to the peace and security of society, the courts cannot, without usurping legislative functions, override the will of the people as thus expressed by their chosen representatives. They have nothing to do with the mere policy of legislation. Indeed, it is a fundamental principle in our institutions, indispensable to the preservation of public liberty, that one of the separate departments of government shall not usurp powers committed by the constitution to another department. And so, if, in the judgment of the legislature, *the manufacture of intoxicating liquors for the maker's own use, as a beverage, would tend to cripple, if it did not defeat, the efforts to guard the community against the evils attending the excessive use of such liquors, it is not for the courts, upon their views as to what is best and safest for the community, to disregard the legislative determination of that question.* So far from such a regulation having no relation to the general end sought to be accomplished, the entire scheme of prohibition, as embodied in the constitution and laws of Kansas, might fail, if the right of each citizen to *manufacture intoxicating liquors for his own use as a beverage were recognized. Such a right does not inhere in citizenship.* Nor can it be said that government interferes with or impairs any one's constitutional rights of liberty or property when it determines that the manufacture and sale of intoxicating drinks, for general or *individual use, as a beverage,* are, or may become, hurtful to society, and constitute, therefore, a business in which no one may lawfully engage. Those rights are best secured, in our government, by the observance, upon the part of all, of such regulations as are established by competent authority to promote the common good. No one may rightfully do that which the law-making power, upon reasonable grounds, declares to be prejudicial to the general welfare."

 All the authorities agree that it is the peculiar function of the lawmakers to ascertain and determine when the welfare of the people requires the exercise of the State's police powers, and what are appropriate measures to that end, subject only to the power of the courts to adjudge whether any particular law is an invasion of rights secured by the Constitution.

These same principles were set forth in Sheppard v. Dowling, 127 Ala. 1, 28 So. 791, 85 Am.St.Rep. 68, where the constitutional provision here relied upon was invoked. In answering the argument that the act violated section 54, art. 4, of the Constitution of 1875 (section 93 of the Constitution of 1901), the Court said [page 794]: "There is authority for this answer to the position thus taken for appellant: That the purpose, object and effect of the act is regulative of the liquor traffic, by putting it in the immediate control of men who have no personal interest to be subserved by increasing the volume of business, or by selling liquors of an inferior and deleterious quality, etc.; that under the police power the state has the undoubted right to provide such regulations, and the pecuniary interest which the State is supposed to have in the business through its subdivisions, is a mere necessary incident to the exercise of this undoubted power; and hence that the business so carried on is a public governmental concern, and not a private enterprise, within the purview of the organic provision in question."

True, a definite announcement upon section 54, supra, was not necessary under the facts of that case, but the Court was answering the argument in relation thereto, and the mind of the Court was directed to that very question, which is further evidenced by the citation of State v. Aiken, 42 S.C. 222, 20 S.E. 221, 26 L.R.A. 345, a case directly in point.

But the question was again before the Court in Equitable Loan & Security Company v. Town of Edwardsville, 143 Ala. 182, 38 So. 1016, 111 Am.St.Rep. 34, wherein Sheppard v. Dowling, supra, was cited, and the following language used [page 1018]:

"We think it is well settled that the Legislature, in dealing with the sale of intoxicating liquors, is fulfilling a public duty; that it is striving to promote the health, safety, and morals of the community; that in the establishment of the dispensary it constitutes a public object, use, or purpose in the promotion of which public money may be lawfully invested and expended.

"When the Legislature determined that the traffic should be regulated by the establishment of dispensaries, and conferred on municipalities the charter power to carry on dispensaries for the sale of intoxicating liquors, and the dispensary was established by the town, we think the town in carrying on the dispensary would be in the exercise of a governmental function, the primary purpose of which should be and would be to so regulate the sale and use of ardent spirits in the community as to promote the health, safety, and morals of its people. And certainly the public would be interested in an instrumentality that in its operation would tend to the accomplishment of such an object. Mitchell v. State, 134 Ala. [392], on page 408, 32 So. 687.

"We have seen that the liquors supplied by the town to the dispensary were necessary for the carrying on of the dispensary, and that the dispensary was a public or municipal concern—a governmental function. It would seem to follow, therefore, that the stock of liquors would be held in trust by the municipality for use in which the public is concerned, its welfare promoted, and the functions of government discharged."

Nor need we stop to inquire whether these expressions were absolutely essential to the decision, as the court evidently re-approved the language of Sheppard v. Dowling, supra, and the principles of law therein announced, which we consider too well established to be now questioned.

The case of State v. Aiken, 42 S.C. 222, 20 S.E. 221, 26 L.R.A. 345, cited in Sheppard v. Dowling, supra, is confessedly in point, and rather severely criticised. We have read the case with much care and consider it entirely sound. It has been often approvingly cited.

In Mitchell v. State, 134 Ala. 392, 32 So. 687, this Court, in discussing some of the reasons for legislative authorization of dispensaries, observed [page 692]: "Wherever legislation of this character (that is, for the committing of this traffic to dispensaries) has been had,—in this state and out of it, as far as we are advised,—it has proceeded on the theory that the public alone should be interested in the business; that the state, county, or municipality, as the case might be, should engage in the business, should supply the funds to inaugurate it and carry it on, should with public funds pay the dispensers or other necessary agents, so that they would be wholly disinterested, and without incentive to exploit the traffic or to increase its volume, and should, while on the one hand receiving whatever profits might incidentally result from thus on principles of public policy controlling and carrying on a traffic requiring police regulation, and, in a sense, repression, on the other, incur and bear the losses which might result from the business. And it is, to say the least, largely upon this theory that the courts have upheld such legislation."

Acts of similar character to that here involved have been upheld as in the proper exercise of the police power. "It is generally held that where the state prohibits the sale of intoxicating liquors by private individuals or corporations, and itself engages in the distribution thereof, the regulation of the sale thereof is admittedly within the police power." State v. Andre, 101 Mont. 366, 54 P.2d 566, 569. "To state it otherwise, the state has the right and power to provide for the sale of intoxicating liquors solely through state stores." Ajax v. Gregory, 177 Wash. 465, 32 P.2d 560, 562.

The Supreme Court of Pennsylvania in Commonwealth v. Stofchek, 322 Pa. 513, 185 A. 840, wherein the constitutionality of a state liquor store act was involved, said [page 844]: "But, the state possesses

inherently a broad police power, which transcends all other powers of government. * * * 'On it the very existence of the state depends.' * * * The fact that the system carries regulation by state liquor stores to a higher degree than the licensing system, by placing the sale of liquor directly in the hands of the state, does not militate against the constitutionality of the act. It is rather in aid thereof, as the state can thus exercise a greater measure of control than was possible under the former system." To like effect, see State v. Arluno, 222 Iowa 1, 268 N.W. 179; State v. Davis, 132 Ohio St. 308, 7 N.E. 2d 652; Frankenstein v. Leonard, 134 Ohio St. 251, 16 N.E.2d 424.

As to the police power this Court has very recently (Franklin v. State, 232 Ala. 637, 169 So. 295) had occasion to observe [page 298]: "The limits of a state's police power has never been fixed, nor its boundaries defined. It is not subject to any definite limitations or boundaries, but it represents the state's great reserve power, and is at all times coextensive with the necessities of the case and the safeguard of the public interest."

■ The exercise of the police power is a governmental function. It is a power that cannot be alienated or surrendered by the legislature. Alabama Water Co. v. City of Attalla. 211 Ala. 301, 100 So. 490. See, also, Phoenix Assur. Co. v. Fire Department of Montgomery, 117 Ala. 631, 23 So. 843, 42 L.R.A. 468. It follows as of course that it is a power that is to be exercised for public purposes only.

■ This Court in Southern Express Co. v. Whittle, 194 Ala. 406, 69 So. 652, L.R.A.1916C, 278, pointed out that our constitutional guaranties were never intended to restrict the rightful exercise of the police power of the State. Of course the police power can be set aside by the Constitution (State v. McGough, 118 Ala. 159, 24 So. 395), but we agree with the Virginia court in Shenandoah Lime Co. v. Mann, 115 Va. 865, 80 S.E. 753, Ann.Cas. 1915C, 973, that while the police power is not paramount to the constitution, yet its free exercise is never interfered with, unless plainly in conflict with the higher law, and that the courts generally are indisposed to suffer the police power to be impaired or defeated by constitutional limitations.

In the Shenandoah Lime Co. Case, supra, the court was dealing with a constitutional prohibition against the State engaging in works of internal improvement. The holding was that the expenditure by the state in establishing machinery and housing for convicts to grind oyster shells and limestone rocks was an exercise of the police power and not within the constitutional prohibitions. In other words, the predominant purpose was for working the convicts, and involved the exercise of a governmental function which was not embraced in the constitutional prohibition.

Like thought was expressed in State v. Froehlich, 115 Wis. 32, 91 N.W. 115, 58 L.R.A. 757, 95 Am.St.Rep. 894, wherein the court said [page 116]: "We think it clear that such conception included those things which ordinarily might, in human experience, be expected to be undertaken for profit or benefit to the property interests of private promoters, as distinguished from those other things which primarily and preponderantly merely facilitate the essential functions of government."

■ The police power has been described as the law of necessity. It is the power of self-protection on the part of the community. 11 Amer.Jur. 978.

■ It has been said in reference to legislation concerning intoxicating liquors, that the power of the state in this regard is an incident to society's right of self-protection. "It is therefore essentially subject to the police power and has been so regarded for over a century." 15 R.C.L. 254. Its regulation and control is held by all the authorities to be a governmental function based upon the duty of the government to protect the community from crime and the burdens of pauperism. So regarded, when the state itself takes over the traffic, it is as much in the exercise of a governmental function, through the police power, as when it works its convicts on farms purchased and in factories constructed by the state.

■ As we read the argument, it is conceded that as to regulation, control or prohibition of the liquor traffic, the state is in the exercise of its police power and of its governmental functions, but that when the state establishes its own liquor stores, there is a sudden shift from the police power, and the government is then engaged in a private enterprise. And this is urged, notwithstanding the universally recognized principle that it is the peculiar function of the lawmakers to ascertain and to deter-

mine the appropriate measures to be used in the exercise of this undoubted police power. No one has any inherent right to engage in the liquor traffic, and this argument leads to the illogical result that the state may license and delegate to another that which it cannot do itself. Sound reasoning, we submit, justifies no such conclusion.

 Police power is inherent in the government, and while it may be set aside by the Constitution, yet in order to find that it has been so set aside the Constitution must plainly so indicate. Relator therefore must rest upon section 93 of our Constitution to find such a result. And yet this section gives not the slightest indication of any such intention.

 It follows, therefore, that this police power over the liquor traffic is wholly uninfluenced and unaffected by any constitutional provision. The State as a consequence still possesses the power to its fullest extent and the authorities cited disclose that laws of this character have been uniformly upheld. Indeed, we find none to the contrary.

 But relator says that it is a private enterprise because the Supreme Court of the United States so designated it in Ohio v. Helvering, 292 U.S. 360, 54 S.Ct. 725, 78 L.Ed. 1307, where was involved the taxing power of the federal government, a question far removed from that with which we are here concerned. As observed by the Supreme Court of the United States in Osaka Shosen Kaisha Line v. United States, 300 U.S. 98, 57 S.Ct. 356, 358, 81 L.Ed. 532: "It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision." This is a most appropriate case for the application of this maxim. The Helvering Case but followed a former holding involving the dispensary laws of South Carolina, and the power of the federal government to impose its internal revenue tax thereon, as found in State of South Carolina v. United States, 199 U.S. 437, 26 S.Ct. 110, 50 L.Ed. 261, 4 Ann.Cas. 737. The reasoning of the opinion is readily followed, and logical enough. Under the federal Constitution the power of Congress to levy such a tax was full, complete and untrammeled. There was no limitation. The exemption of the property

of the state was implied from the dual character of our government. This implication was by the courts, and it was for the courts to define the limitations. In South Carolina v. United States, supra, therefore, the holding was that the limit of the exemption must be determined by the condition of things at the time the federal Constitution was framed. As the Court said [page 114]: "What, in the light of that condition, did the framers of the convention intend should be exempt? Certain is it that modern notions as to the extent to which the functions of a state may be carried had then no hold." Following this line of reasoning, the holding was that the exemption is not by implication to be extended beyond the more or less primitive functions of state government known at the time the constitution was framed. Of course, at that time the liquor traffic was entirely a private enterprise, engaged in as other businesses. Strict regulatory and prohibitory laws were to follow long after when the evils of the traffic were made more manifest and advancing civilization saw the need for protecting society against them, and the crime and pauperism resulting therefrom.

Time moves on, and government takes account of the measured step of progress for the application of the police powers to meet new public needs. For an illustration we may turn to Dorman v. State, 34 Ala. 216, where it was said intoxicating liquors constitute property equally sacred as all other property, and that the court would not "listen to a suggestion, that this particular species of property is so pernicious in its influences upon society, that the best interests of the State would be promoted by its destruction." But later the Supreme Court of the United States in Mugler v. Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205, declared to the contrary. It is apparent, therefore, that what is a rightful exercise of the police power has advanced and progressed, so that what in other days would not have found favor or countenance with lawmakers or courts, as appropriate or proper manifestations of the police power, is now never questioned or doubted. Southern Express Co. v. Whittle, supra.

It is clear enough, therefore, that what was said by the Court in the Helvering and South Carolina Cases, supra, as to a private enterprise can have no bearing here. Those cases as well as Brush v. Commissioners, 300 U.S. 352, 57 S.Ct. 495, 81 L.Ed. 691, 108 A.L.R. 1428; Helvering v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427, and

342

Allen v. Board of Regents of University, 304 U.S. 439, 58 S.Ct. 980, 82 L.Ed. 1448, demonstrate that the state had the right in the exercise of the police power to take over the liquor traffic, and that in so doing it was exercising a governmental function. All of which is entirely consistent with the theory that the courts will not extend the tax exemptions in such instance.

The liquor traffic was originally a private enterprise, and the Court merely holds that for the purpose of federal taxation it will so remain. To apply the language of those opinions to a construction of section 93 of our Constitution would be a clear perversion of its meaning, and, in our opinion, entirely unjustified.

We are speaking here of police power, which we have shown is not limited by section 93, Constitution. The Supreme Court of the United States was speaking of the taxing power of the federal government, while at the same time it was recognizing the police power of the state.

██ Authorities are cited to the effect that a tax can only be imposed for a public purpose, and if for a private purpose would be violative of the federal Constitution as well. This Court recognizes the principle this is an essential limitation of the taxing power. Garland v. Board of Revenue, 87 Ala. 223, 6 So. 402. As we here hold that the purpose is public and in the exercise of a governmental function, that question needs no further consideration. The Act involves no infringement upon the due process clause (U.S.C.A. Const. Amend. 14) or any other provision of the federal Constitution.

██ Much argument is advanced on the question of profit and loss in the operation of the liquor stores. But as said by the Court in the Town of Edwardsville Case, supra, we must not forget the purpose for which they were established, and any matter of profit or loss is a mere incident. We consider that authority sufficiently answers these suggestions.

██ It scarcely need be said that the matter of policy is one for the Legislature, and whether wise or unwise is of no concern to the courts. We are called upon to determine the question of legislative power, and that alone.

As to section 35 of the Constitution of 1901, it was expressly held in Southern Express Co. v. Whittle, supra, that it does not restrict the rightful exercise of the police power of the State.

The Act here assailed contains many regulations and restrictions. They are given no discussion by counsel, and have been considered unnecessary to relate here. We have treated the case upon the line of argument employed in briefs, and upon due consideration we are far from being persuaded beyond a reasonable doubt of the invalidity of this Act upon constitutional grounds.

We conclude the trial court correctly ruled in sustaining the Act, and the judgment will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS, BOULDIN, BROWN, and FOSTER, JJ., concur.

KNIGHT, Justice (dissenting).

I cannot bring myself into accord with the holding of the majority in this case, as expressed in the foregoing opinion of Mr. Justice GARDNER. My views on the constitutional question here presented are so fixed, and deeply rooted, that I feel impelled to register my dissent.

So far as I know, no man doubts the right of the state, when speaking through its mouth-piece, the Legislature, to legalize and regulate, *or to prohibit,* by suitable laws, duly and constitutionally adopted, the sale of intoxicating liquors.

But the right to legalize *and regulate* the sale of intoxicating liquors is one thing, and the right of the state, within *present constitutional limitations,* to engage in the business of selling such liquors, under the guise of regulation, is quite another and different question.

The writer has always thought, and he still belongs to that school of thought, that the Constitution stands for, and means something in the life of a people and of a state. Especially is this true under a representative government.

Under our system and form of state government, the Constitution is a *bridle, a limitation,* upon the Legislature. In short, it is the peoples' *Magna Charta,* reflecting their will, expressed in their own chosen language, and is the supreme law of the state.

The Constitution means what it says and says what it means.

Section 93 of the Constitution reads, so far as here pertinent: "The state shall not engage in works of internal improvement, nor lend money or its credit in aid of such; *nor shall the state be interested in any pri-*

*vate or corporate* enterprise, or lend money or its credit to any individual, association, or corporation."

Plain language, it would seem. In an unbroken line of cases this court has steadfastly held that when a contract, a statute, or constitutional provision, is plain in its meaning, certain in its terms, and free of ambiguity, there is no room for judicial construction, and certainly no *justification for judicial amendment.*

The effect of the majority holding in this case is to write into Section 93 of the constitution a provision or exception reading: *"Provided that the Legislature may establish throughout the state, or in any of the counties thereof, liquor stores, where, in the name of the state, and to supply revenue for the state, spirituous, vinous or malt liquor may be sold at wholesale or retail."*

But the majority say, in effect, that this is one of the ways that the state may *regulate,* for the best interest of the people, the sale of this harmful beverage. That the state may do this under its *police power.* This argument is plausible, but fundamentally unsound.

There is no man at all conversant with contemporary utterances, who does not know that it *was not regulation,* but *revenue,* which inspired the State Liquor Store legislation.

But back to the *police power* theory as furnishing support for this legislation. It is everywhere recognized, and nowhere doubted, that the police power of the state cannot extend beyond the limits of the Constitution. It must be exercised within the Constitution. Its north, east, south and west boundaries are the Constitution.

Section 93 of the Constitution is certainly a limitation upon this power, when, by its express terms, the state is prohibited from being *"interested in any private or corporate enterprise."*

That this legislation cannot be sustained upon the theory of the exercise of the state's *police power,* I have the very highest authority. I quote the language of the Supreme Court of the United States, in the case of Ohio v. Helvering, Commissioner of Internal Revenue, 292 U.S. 360, 54 S.Ct. 725, 726, 78 L.Ed. 1307: "A distinction is sought in the fact that after that case was decided the Eighteenth Amendment was passed, and thereby, it is contended, the traffic in intoxicating liquors ceased to be private business, and then with the repeal of the amendment assumed a status which enables a state to carry it on under the police power. The point seems to us altogether fanciful. The Eighteenth Amendment outlawed the traffic; but certainly it did not have the effect of converting what had always been a private activity into a governmental function. The argument seems to be that the police power is elastic and capable of development and change to meet changing conditions. Nevertheless *the police power is and remains a governmental power, and applied to business activities is the power to regulate those activities, not to engage in carrying them on.* Rippe v. Becker, 56 Minn. 100, 111, 112, 57 N.W. 331, 22 L.R.A. 857. If a state chooses to go into the business of buying and selling commodities, its right to do so may be conceded so far as the Federal Constitution is concerned; but the exercise of the right is not the performance of a governmental function, and must find its support in some authority apart from the police power. When a state enters the market place seeking customers it divests itself of its quasi sovereignty pro tanto, and takes on the character of a trader, so far, at least, as the taxing power of the federal government is concerned." [Italics supplied.]

My brothers seem to lay much stress upon the case of Sheppard v. Dowling, 127 Ala. 1, 28 So. 791, 85 Am.St.Rep. 68. If I may be emphatic, I cannot see that this case can, in the slightest degree, give comfort to my brothers. In that case, Judge McClellan was dealing with a municipality. Candor on the part of the majority should suggest the admission that municipalities do not come within the provisions of Section 93 of the Constitution. The limitation set forth in said section *applies wholly to the state, not to municipalities.*

In my opinion, the case of Sheppard v. Dowling, Judge, supra, can have nothing more to do with the settlement of the question here involved than did Halley's Comet have to do with bringing about the financial depression of 1929–1933.

I cannot escape the conclusion that the so-called Alabama Beverage Control Act is in purpose, in spirit, and in essence, *and was so designed to become,* a revenue producing measure solely; and that it was enacted to raise revenue to meet a supposed economic situation. If this is true, the act violates both the spirit and the letter of the Constitution.

The day has never yet come in the history of the people of this state, when the

344

law had to be stifled to meet a supposed pressing financial situation.

It is my opinion that the holding of the majority in this case will ultimately result in bringing about such a situation. Experience teaches that all *heights* and all *depths* are reached by successive steps of induction. This court has no power to make a Constitution, and certainly it has no right to destroy one, ordained by the people.

My judgment is, the Alabama Beverage Control Act infringes upon, and is violative of Section 93 of the Constitution of the State of Alabama, and is null and void: that the respondent is not, therefore, in the possession of, nor exercising the functions of, any lawfully existing office, and that a judgment of ouster should be entered in this cause.

I am not unmindful of the fact that a "dissent," or "dissenting opinion" is without efficacy, save to record the individual views of the writer; and that the *minority is inarticulate,* yet I feel impelled, while I may, to make clear my position on this transcendently important question. I feel that the majority have, by their opinion, either *deleted* Section 93 from the Constitution, or, even worse, have written into it, by judicial amendment, words never uttered or considered by the framers. In either case, the result, in my judgment, is tragic. No doubt the majority holding will be made the basis for embarking the state upon other enterprises. The end cannot be foretold.

I am regretfully conscious, also, that I stand alone on this question. However, that is no deterrent. Let this dissent be filed along with the majority opinion.