HOUSTON, Justice
(concurring in the result).
To me, the meaning of the constitutional prohibition “nor shall the state be interested in any private or corporate enterprise” hinges on the words “[to] be interested in,” “private,” and “corporate,” rather than on the word “enterprise.”
I concede that an “enterprise” is “[a] business venture or undertaking.” Black’s Law Dictionary 531 (6th ed. 1991). I concede that the sale of liquor and wine at retail for off-premises consumption is an enterprise. I concede that “ ‘the state [had] the right and power to provide for the sale of intoxicating liquors solely through state stores,’ ” Bartlett v. Alabama Alcoholic Beverage Control Board, 683 So.2d 947 (Ala.Civ.App.1994), quoting State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 339,186 So. 487, 495 (1939), and that it had that right and power from the enactment of the original Alabama Alcoholic Beverage Control Act (Acts of Alabama 1937, No. 66) until 1980, when the legislature passed the Alabama Beverage Licensing Code (Acts of Alabama 1980, No. 80-529), which empowered the Alcoholic Beverage Control Board to issue licenses to individuals and corporations “[t]o sell liquor and wine at retail for off-premises consumption.” Ala. Code 1975, § 28-3A-3(8). I concede that thereafter the ABC Board did issue licenses to individuals and corporations to sell liquor and wine at retail for off-premises consumption.
The majority of this Court did not agree with the State’s argument in State v. Murphy, which was as follows:
“[T]he words, ‘nor shall the state be interested in any private ... enterprise,’ mean merely that the State shall not be interested with individuals, associations or corporations in the operation of a private or corporate enterprise, and [those words were] not intended to prevent the State itself from engaging in a private enterprise.”
237 Ala. at 335, 186 So. at 490. The majority, in rejecting this argument, wrote: *959 out of harmony with the motivating cause of the inclusion of this prohibition in our organic law. The interest referred to is a pecuniary interest in any private or corporate enterprise, and this prohibition was, we think inserted in our organic law as a limitation upon the power of the legislature to again place our State in business enterprises and in competition with private individuals or corporations; or to undertake those things which ordinarily might, in human experience, be expected to be undertaken for profit or benefit to private promoters.
*958 “But we think this too narrow a construction of the Constitution, and clearly
*959 “And we are of the opinion it is quite broad enough to embrace a business operated solely by the State for trade and traffic.”

Id.

I concede that if this interpretation of the phrase in § 93 of our Constitution is correct, then the judgment of the Court of Civil Appeals must be affirmed, because the majority in Murphy held that § 93 was inserted into our organic law so as to prevent the State from being placed in business enterprises in competition with private individuals or corporations. Since the Board began in the 1980s to issue licenses to individuals and corporations to sell liquor and wine at retail for off-premises consumption, the State has been in competition with those licensees.
I was prepared to dissent, until I tried to make the phrase “[to] be interested in” mean “to be in competition with.” It does not. The word “interested” is an adjective as it is used in § 93 of our state constitution. The adjective “interested” is defined as “having a share or concern in some affair or project.” Webster’s Third New International Dictionary 1178 (3 ed. 1971). Nowhere can I find any authority to support the majority’s contention that the phrase “[to] be interested in” is synonymous with the phrase “to be in competition with.” The Oxford Thesaurus, American Edition 242 (1992), does not list “compete” as a synonym of “interested,” nor does it list “interested” as a synonym of “compete,” pp. 70-71. Therefore, by this phrase in § 93, the State is prohibited from “having any share or concern” in any private or corporate enterprise.
“Enterprise” is defined as “[a] business venture or undertaking.” Black’s Law Dictionary 531 (6th ed. 1991). If the State is prohibited from being interested in any enterprise, then clearly the State would be prohibited from having any share or concern in any business venture or undertaking, including the retail liquor business.[3] However, the word “enterprise” is preceded by the phrase “any private or corporate.” “[Private” is defined as “[a]ffecting or belonging to private individuals, as distinct from the public generally.” Black’s Law Dictionary 1195. “Corporate” is defined as “[b]elonging to a corporation; as a corporate name. Incorporated; as a corporate body.” Black’s Law Dictionary 339. This is the same definition that appeared in the 1891 Black’s Law Dictionary 278 (the oldest Black’s that I have been able to consult). I cannot find a particular or different meaning for the phrase “corporate enterprise” in use at the time the 1875 Constitution or the 1901 Constitution was drafted.
Therefore, I conclude that the plain meaning of the phrase in § 93 — “nor shall the state be interested in any private or corporate enterprise” — is that the State shall not have any share or concern in a business venture or undertaking owned by private individuals or corporations. Clearly, the ABC Board retail stores are not business ventures or undertakings owned by private individuals or corporations.
This plain meaning is substantiated by the drafters’ inclusion of the phrase that follows the provision in question: “nor shall the state ... lend money or its credit to any individual, association, or corporation.” Taken together, these phrases preclude the State from having a share or concern in business ventures or undertakings owned by private individuals or corporations or from lending money or extending credit to any individual, any collection of individuals, or any corporation.
History also supports this plain meaning.
*960 The Constitution of Alabama of 1865 provided:
“§ 32. The general assembly shall make provision by law for obtaining correct knowledge of the several objects proper for improvement in relation to the roads and navigable waters of the state and for making a systematic and economical application of the means appropriated to those objects.”
(Emphasis added.) This provision was changed in the 1868 Constitution to provide as follows:
“§ 33. The state shall not engage in works of internal improvement; but its credit in aid of such may be pledged by the general assembly on undoubted security, by a vote of two-thirds of each house of the general assembly.”
(Emphasis added.)
Under the provisions of § 33 of the 1868 Constitution, the legislature enacted laws that resulted in what historians have referred to as the railroad scandals. In Rogers, Ward, Atkin, and Flynt’s Alabama: The History of a Deep South State (1994), the following account appears on pages 253-54:
“With good cause various scholars have illustrated the state’s railroad scandals with the case of the Alabama and Chattanooga Railroad. After paying $200,000 (apparently in bribes to state politicians) for its state charter, the company moved to recoup its investment. Governor Smith, in what has passed as merely a ease of inept bookkeeping, endorsed bonds worth $4,720,000 for the company. Only 240 miles of track were ever completed (entitling the company to $768,000), and only 154 of those were in the correct state (Alabama). Returning to its cornucopia of wealth, and with wholesale bribery of the legislature, the company got $2,000,000 in state bonds with its property as security. Most of the bonanza was used to build a hotel and opera house in Chattanooga, Tennessee. Under such management the Alabama and Chattanooga proceeded into bankruptcy and could not pay the interest on its bonds. The state paid the interest and seized the road and tried to operate it. The state then bought the road at a bankruptcy sale for $312,000 (was it buying its own railroad?), only to be reversed by state and federal courts. The state ended up paying the first mortgage holders $1,000,000 to take the line back in order ‘to be out of the business.’
“To a lesser extent the same machinations were repeated with the South and North Alabama Railroad, the East Alabama and Cincinnati, the Selma and Gulf, the Mobile and Alabama, the Montgomery and Eufaula, and others. In addition to state support, counties and cities also issued bonds, leading to the famous ‘strangulated’ counties that went into bankruptcy. Viewed with perspective, it was a sorry story of human gullibility, unregulated entrepreneurs, and dishonest politicians. The taxpayers were the victims.”
The president of the 1875 Constitutional Convention, in opening the convention, remarked:
“The growth of corporations is one of the marvels of the age in which we live. Their power, like that of King George, ‘has increased, is increasing, and ought to be diminished.’ Great as they are, they are simply the representatives of individual interests, and are never organized except to promote personal ends. The dignity of government is always compromised when its credit is surrendered and its honor committed to other custodians than its own agents and servants. Constitutional prohibitions should protect the State against the contingencies of legislative departure from the principle."
(Emphasis added.) Minutes of the Constitutional Convention of 1875, pp. 6-7.
The Constitutional Convention of 1875 changed § 33 of the 1868 Constitution. It was first proposed that what is now § 93 of the present Constitution read: “Sec. 3. The State shall never engage in works of internal improvement, nor lend its credit in aid of such; nor shall the state be interested in, or lend money or its credit in aid of, any individual, association or corporation, for any purpose whatsoever.” Minutes of the Constitutional Convention of 1875, pp. 38 and 109.
*961 The following appears on page 109 of these minutes:
“Mr. Sykes offered the following amendment, which was adopted:
“Amend in the first line by inserting, between the words ‘lend’ and ‘its,’ the words ‘money or’; and further amend by striking out all of said section after the words ‘interested in,’ and inserting therefor ‘any private or corporate enterprise, or lend money or credit to any individual, association or incorporation.’
“The section, thus amended, was adopted.”
Therefore, instead of the State’s not being “interested in ... any individual, association or corporation, for any purpose whatsoever,” the drafters of the Constitution of 1875 proposed, and the citizens of Alabama adopted, the phrase “nor shall the state be interested in any private or corporate enterprise.”
In the resolution commending the proposed Constitution of 1875 to the citizens of Alabama, the delegates to the Constitutional Convention summed up their feelings of the necessity for a new constitution; that resolution contained the following remarks, which support the plain meaning of the phrase in § 93 now in dispute:
“The Constitution of 1868, was not the work of the People of Alabama. It is the offspring of usurpation, and the contrivance of unscrupulous adventurers, inflicted upon our people after they had solemnly rejected it. It was framed by enemies in utter disregard of the altered condition of our people, with no consideration for that universal impoverishment, which should have forbidden the imposition of every unnecessary burden. It was manufactured for the benefit of alien and corrupt usurpers, and has been administered in an office-holding and governmental extravagance, which in a few years has bankrupted the State and well nigh ruined our people.
[[Image here]]
“The General Assembly can pass no laws except of a general and public character. All power to enact local or special laws for the benefit of individuals or corporations is
prohibited, and the people are thereby protected against the heavy expense of legislation in which they have no interest.
“All power in the General Assembly to embark the State in railroad building, or works of internal improvement, or to give or lend the money or credit of the State to individuals or corporations in aid of such enterprises is forever prohibited. Neither can the legislature authorize any town, city or county to bind the people for stock in railroads or any works or enterprises of like character. The denial of this power to your State Government is an invaluable safeguard in the future, against the imposition of burdens that are now crushing the people down with taxes.
[[Image here]]
“Fellow-citizens, the constitution of 1868 and the constitution of 1875, are now before you — make your own selection, and shoulder the responsibilities and possibilities attending your decision.
“How can any true man hesitate[?] Behind him and around him are the bitter fruits of a constitution he had no voice in making. What is the future of Alabama and her people, if the incubus of an alien constitution, framed by usurpers in the interest of plunderers, remains as the organic law for their government?”
(Emphasis added.)
Because the ABC Board’s retail stores are not business ventures or undertakings owned by private individuals or corporations, the State did not violate § 93 of the State constitution when through those stores it maintained a monopoly on the retail sale of liquor and wine for off-premises consumption. The mere fact that in the 1980s the State gave up its monopoly in this field so as to allow certain individuals and corporations also to sell liquor and wine at retail for off-premises consumption did not trigger a violation of § 93, for “interested in” does not mean “in competition with.”
Therefore, I would hold that the phrase “nor shall the state be interested in any private or corporate enterprise” means merely that the State shall not be interested with individuals, associations, or corporations in the operation of a private or corporate enter *962 prise; and I would overrule that portion of State v. Murphy that is inconsistent with this interpretation. This Court must remember that it is construing a state constitution and not the Federal Constitution. State constitutions are not the source of the police power of state legislatures. 16 C.J.S. Constitutional Law § 58, p. 149 (1984) (citing Bolton v. White Motor Co., 239 Ala. 168, 194 So. 510 (1940)). A state’s police power is inherent in its very existence and is not derived from a grant of power from a constitution. “[T]he legislature possesses and may exercise all legislative power, or power to enact statutes, of the state or people of the state, subject only to the limitations or prohibitions imposed by the state constitution.” 16 C.J.S. at 150 (citing Van Hart v. deGraffenried, 388 So.2d 1196 (Ala.1980)). Because of their nature, state constitutions must be “construed strictly in favor of the state, and as not divesting it or its government of any of its prerogatives, unless the intent to do so is clearly expressed.” 16 C.J.S. at 150-51 (emphasis added). See also Sims v. Russell, 236 Ala. 562, 183 So. 862 (1938). Herein lies my problem with the majority opinion. The majority in this case, like the majority in Murphy, failed to analyze the effect that § 93 has on the scope of the state’s police powers, in accordance with the principles enunciated above.
Because I am convinced that the only logical and historically accurate construction of the phrase “nor shall the state be interested in any private or corporate enterprise” is that it is a prohibition against the State’s investing in privately owned business enterprises over which the state would have only limited control, I cannot concur with the majority’s opinion as written and, therefore, I concur only in the result of that opinion.

. I tried to make the phrase “private or corporate enterprise” mean “enterprise." It does not.