I write specially in light of the lengthy dissent by the Chief Justice. He raises many valid and challenging legal, social, and moral points, but I respectfully disagree that we properly can address those points in response to the petition for the writ of certiorari filed by Brian Pankey ("the father"). In that regard, this Court must remain mindful of the limited scope of the initial review that attends the filing with this Court of a petition for a writ of certiorari directed to one of the courts of *Page 964 
appeal. Rule 39, Ala.R.App.P., prescribes the limitations in clear, mandatory terms. Rule 39(a)(1) dictates that "[i]n all civil cases . . . petitions for writs of certiorari will be considered only" in five categories precisely delineated in Rule 39(a)(1) as being eligible for consideration for the issuance of the writ. Any contention sought to be presented that does not fit within one of those categories cannot be considered. In this case, the father has chosen to proceed solely pursuant to Rule 39(a)(1)(D). The language of that Rule is as follows:
 "(a) Considerations Governing Certiorari Review; Grounds. Certiorari review is not a matter of right, but of judicial discretion. A petition for a writ of certiorari will be granted only when there are special and important reasons for the issuance of the writ.
 "(1) Civil Cases. . . . In all civil cases . . . petitions for writs of certiorari will be considered only:
". . . .
 "(D) From decisions in conflict with prior decisions of the Supreme Court of the United States, the Supreme Court of Alabama, the Alabama Court of Criminal Appeals, or the Alabama Court of Civil Appeals; provided that:
 "1. When (a)(1)(D) is the basis of the petition, the petition must quote that part of the opinion of the court of appeals and that part of the prior decision the petitioner alleges are in conflict; or
 "2. Where it is not feasible to quote that part of the opinion either because no wording in the opinion clearly shows the conflict or because no opinion was issued, the petition shall state specifically and with particularity how the decision conflicts with a prior decision."
The father's statement of his Rule 39(a)(1)(D) ground in his petition reads, in its entirety, as follows:
 "The Father is seeking review of the decision of the Court of Civil Appeals based on Rule 39(a)(1)(D)2. of the Alabama Rules of Appellate Procedure in that the Court of Civil Appeals failed to review the trial court's decision in light of the factors set out by this Honorable Court in Ex parte Devine, 398 So.2d 686
(Ala. 1981). Although the Father addressed each of these factors in the brief on appeal and the Court of Civil Appeals appeared to consider them in the August 24, 2001, opinion . . ., it does not appear they were given any consideration in the March 15, 2002, opinion. . . . By failing to consider the trial court's decision in light of all of these factors, the March 15, 2002, decision of the Court of Civil Appeals is in conflict with the law as set out by this Honorable Court in Ex Parte Devine."
The father later reaffirmed in his petition the focus of his conflict ground by providing this condensed restatement of it as one of his "Issues Presented for Review":
 "Did the Court of Civil Appeals err so as to create a conflict between its decision of March 15, 2002, and the law as set out by this Honorable Court in Ex parte Devine by affirming the trial court's custody decision while failing to consider that decision in light of all of the factors set out in Ex parte Devine rather than only the factor of adultery?"
Accordingly, and assuming without determining that this statement of "conflict" satisfies Rule 39(a)(1)(D)2., as specified by the father, our threshold function is to review the March 15, 2002, decision of the Court of Civil Appeals in conjunction with a careful reading of Ex parteDevine, to determine if a true conflict has been identified. *Page 965 
In that regard, we will consider all of the facts stated in the March 15, 2002, opinion of the Court of Civil Appeals. Further, the father having advised us that he "did not file an application for rehearing," we will consider any additional facts he provides in his petition in conformity with the requirements of Rule 39(d)(5)(C):
 "[I]f the petition for writ of certiorari seeks review of a decision of the Court of Civil Appeals and the petitioner has not filed an application for rehearing with the Court of Civil Appeals, and . . . [i]f the Court of Civil Appeals issues an opinion containing a statement of facts and the party petitioning for the writ of certiorari is not satisfied with that statement of facts, the petitioner may, in the petition for the writ of certiorari, present to the Supreme Court a proposed additional or corrected statement of facts or the applicant's own statement of facts, with references to the pertinent portions of the clerk's record and the reporter's transcript."
The father has provided in his petition a three-page "Statement of Facts," which fully complies with that procedure and, thus, those facts (but only those facts) can be considered along with the facts contained in the March 15, 2002, opinion of the Court of Civil Appeals.
In note 6 in his dissent, the Chief Justice first states: "The sole issue before this Court in Ex parte Devine was the constitutionality of the `tender-years' presumption. That presumption required courts to award custody of young children, i.e., children of `tender years,' to the mother." 848 So.2d at 972. Then noting that the Devine court determined that presumption to be unconstitutional, the Chief Justice states, "Thus, the factors discussed in Ex parte Devine were not necessary for the decision and therefore are dicta." 848 So.2d at 972 n. 6. If that is an accurate assessment of the legal status of the factors noted in Exparte Devine, then it is doubtful whether a failure by the Court of Civil Appeals to consider all of them would constitute a true conflict. As stated in Ivey v. Wiggins, 276 Ala. 106, 109, 159 So.2d 618, 620 (1964):
 "`"It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision."'"
(Quoting State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 341, 186 So. 487,496 (1939), quoting in turn Osaka Shosen Kaisha Line v. United States,300 U.S. 98, 103 (1937).)
Applying that principle, this Court concluded that certain statements made in one of its prior decisions, but that were not necessary to the disposition of that case, "are dicta and are not controlling here."276 Ala. at 109, 159 So.2d at 620. See also State ex rel. Robertson v.Robertson, 675 So.2d 422, 425 (Ala.Civ.App. 1995).
However, assuming, for the sake of further analysis, that the Devine
factors have sufficient legal status that a decision of the Court of Civil Appeals "failing to consider [a] trial court's decision in light of all of these factors" could present a true conflict, the Devine factors warrant our attention in the analysis we must undertake in determining whether the writ of certiorari is due to issue. (That the Chief Justice considers those factors to have such status is evident by his statement that the "Court of Civil Appeals' misconstruction of the law it relies upon in affirming the trial court's custody award in this case conflicts directly with Ex parte Devine, which sets out this Court's current test for determining *Page 966 
initial custody." 848 So.2d at 979.) Although the Chief Justice's dissent lists six of the Devine factors, describing them as those "relevant for purposes of this case," 848 So.2d at 981, the court in Ex parte Devine
concluded its catalog of those and certain other factors with the catchall provision, "and any other relevant matter the evidence may disclose." 398 So.2d at 697. In that regard, in addition to the facts mentioned in the Chief Justice's dissent, the opinion of the Court of Civil Appeals noted that the father "admits that the mother is a good mother," 848 So.2d at 962, and explained certain career-imposed limitations on the father's availability for daytime contact with the child:
 "The father testified that he is training to be a pilot in the Army and that three days a week, he is at work from 5:30 a.m. to 5:00 p.m. On Tuesday and Thursday, he works from 7:30 a.m. to 5:00 p.m. He stated he lives near a day-care facility and that he plans to leave the child at the facility while he is at work. He stated that he had training exercises that lasted up to four weeks and that during those times, the child could stay with a member of the father's family, none of whom live in the immediate area. He testified that after a year in Enterprise, the next transfer he will receive will be for three years."
848 So.2d at 961. Furthermore, the Court of Civil Appeals noted that the child "is very close to his half-sibling," 848 So.2d at 962, who, according to the father's statement of facts, is "a girl named McKinley," and the court remarked that "the father stopped sending money to the mother for the child" the month after she filed for divorce. 848 So.2d at 961.
The Chief Justice's dissent states that "the father's argument on appeal" addressed each of the Devine factors. At the threshold stage of considering whether to grant or deny a petition for the writ of certiorari, this Court does not have before it the briefs submitted by the parties to the Court of Civil Appeals. Rather, we have only the brief the father has filed directly with this Court in support of his petition. The only facts we are allowed to consider at this stage are those contained in the opinion of the Court of Civil Appeals and in the father's statement of facts in his petition. Unfortunately, the Chief Justice, in his dissent, goes outside of the confines of those facts in several instances, to assert other, presently extraneous, facts in support of the arguments he makes, apparently having extracted those facts from the record on appeal before the Court of Civil Appeals. This strikes me as contrary to the essential concept of certiorari review.
The writ, when issued, commands the Court of Appeals to certify and send up the record of the proceeding before it. The writ has not yet issued; accordingly, this Court does not presently have custody of that record. It reposes, as it properly should, within the custody of the clerk of the Court of Civil Appeals. Only if we should issue the writ of certiorari to the Court of Civil Appeals in this case, in response to which it would certify and send up to us the record on appeal, would weproperly have access to the full contents of that record. As it now stands, in connection with our analysis of the petition for the purposes of determining whether we should order the writ to issue, we are restricted to the facts contained in the opinion of the Court of Civil Appeals and to those additional facts the father has chosen to include in his petition. Therefore, at this stage we must eliminate from our consideration certain facts recited in the Chief Justice's dissent but which are nowhere contained, or even alluded to, in either the opinion below or the statement of facts presented by the father. For that *Page 967 
reason, I do not believe we can properly entertain the following factual assertions contained in the Chief Justice's dissent, which do not appear anywhere in the opinion of the Court of Civil Appeals or the petitioner's separately submitted statement of facts: That "while the mother and the child were living in Alabama, the mother left the child with the maternal grandmother while she traveled to New Orleans and Dothan on weekends with friends"; that "[t]he father attends church with the child, has not engaged in any extramarital activity, and has demonstrated exemplary conduct"; that "[t]he father's home environment appears impeccable, and he has supportive parents in Alabama who are willing to take care of the child when the father is on temporary military assignments"; that "[t]he father has no history of emotional or mental problems and has not had stress-related problems despite demanding military duties and transfers"; and that "[t]he mother has been able to hold only a series of part-time jobs since the birth of the child. . . ." 848 So.2d at 981-82.
As the Court of Civil Appeals correctly stated in its March 15, 2002, opinion, because the trial court made its custody determination following an ore tenus proceeding, "its judgment will not be reversed absent a showing that the judgment is so unsupported by the evidence as to be plainly and palpably wrong." 848 So.2d at 959 (supporting citations omitted). That is because, as the Court of Civil Appeals further acknowledged, with citations to supporting caselaw, "[t]he trial court is in the best position to determine custody, because it is able to evaluate the evidence and the credibility of the witnesses." 848 So.2d at 959-60. For that reason, again as noted by the Court of Civil Appeals, its review is limited and it "is not allowed to substitute its judgment for that of the trial court in cases involving child custody and visitation." 848 So.2d at 960. In this case, the trial judge awarded the parties "joint legal custody" of the child, with the mother to have "primary physical custody" of the child for 10 months out of the year and the father to have "primary custody of [the] child two (2) months during the summer (June and July)." Each party was to have reasonable visitation during the period he or she did not have primary physical custody.
After a consideration of all of the facts properly before us at this stage, can we say, as the father states in his petition, that the Court of Civil Appeals "failed to review the trial court's decision in light of the factors set out . . . in Ex parte Devine . . ."? Given the restricted nature of our review at this juncture, I do not believe we can presume to draw that conclusion.
That is not to say that what has been laid before us is not troubling, at least as we are called upon to react to it at this time, without the benefit the trial judge had of being able to evaluate the evidence firsthand and assess the credibility of the witnesses.
The Chief Justice devotes much time discussing an entirely different issue, and one the father has not asserted. The Chief Justice criticizes the process whereby, under the Devine-factors approach
 "the trial court weighs factors in a process that is akin to political decision-making. It is a difficult, if not impossible, balancing act that courts by nature are ill-equipped to perform. Simply wading through the factors listed in Ex parte Devine and weighing them to determine which parent should have custody, absent any definitive presumptions, produces inconsistent results. Different trial courts (and appellate courts) will assign different weights to various factors. Presumptions, on the other hand, *Page 968 
serve as benchmarks or rules of law that provide courts with more definitive standards for their rulings."
848 So.2d at 973. Although these arguments may well have merit, the father simply has not sought to raise them. That is to say, he has carefully and precisely focused his statement of the ground of conflict as being that the Court of Civil Appeals failed to review the trial court's decision in light of the factors set out in Ex parte Devine. He has in no way called into question the appropriateness, comprehensiveness, or adequacy of those factors. Consequently, I do not see how this Court, if it is to remain faithful to the carefully structured and circumscribed office and function of the petition for the writ of certiorari and its standard of review of such a petition, can give recognition to an internally volunteered "conflict" argument to justify the issuance of the writ.
These observations may seem, particularly to a lay reader, to represent a blind adherence to "technicalities," which thwarts reaching the merits of this case. Nonetheless, I consider it to be among my duties as a Justice of the Alabama Supreme Court to faithfully observe and follow those portions of the Alabama Rules of Appellate Procedure that are stated in explicit and mandatory terms, and to constrain my appellate review accordingly. Therefore, I have undertaken to write specially to that issue, because my view of the proper application of the definitively restrictive provisions of Rule 39 dissuades my going as far in my analysis as does the Chief Justice. That being said, I do not hesitate to acknowledge that much of what he has to say is worthy of thoughtful consideration in an appropriate case. This, however, is simply not that case.