193 So. 89

**HOLT v. STATE.**

**8 Div. 614.**

Supreme Court of Alabama.

May 4, 1939.

FOSTER, Justice.

The question here under consideration is whether section 47 of the Alabama Beverage Control Act of February 2, 1937, page 40 (at page 80) is effective in a county where a majority of the electors voting in said election voted "no" on the question of whether the sale and distribution of alcoholic beverages shall be legal in that county. See section 51 of the Act, p. 81.

Section 47, supra, is as follows: "Counterfeit Stamps, Crowns or Lids:—That whoever manufactures, buys, sells, offers for sale, or has in his or its possession any reproduction or counterfeit of the Alabama Revenue Stamps, Crowns or Lids provided for in this Act, or stamps, crowns or lids used to identify articles sold and/or distributed by State Liquor Stores, is guilty of a felony and, upon conviction, shall be punished by imprisonment in the penitentiary for not less than a year and a day, nor more than ten (10) years, and in addition, may be fined not less than Two Thousand ($2,000.00) Dollars, nor more than Ten Thousand ($10,000.00) Dollars."

We have heretofore held that the Act is not effective in a "dry" county, so as to authorize the possession of such liquor in that county by one who purchased it in a "wet" county under authority of the Act. Williams v. State, 28 Ala.App. 73, 179 So. 915, certiorari denied 235 Ala. 520, 179 So. 920. That case gave emphasis to that feature of section 51, supra, which provided that "this Act shall not go into effect in such [so called dry] County, and all laws prohibiting the manufacture and sale of alcoholic liquors or beverages now in force and effect in Alabama shall remain in full force and effect in every such County." And in the same section as to dry counties, "the Statutes of Alabama prohibiting the manufacture, sale or distribution of Alcoholic Beverages shall remain in full force and effect."

Section 47, supra, was enacted to prevent evasions of tax features of the law, and if it does not apply in a dry county it would lose its value to a large extent and not accomplish the evident intent of the Legislature.

There are other features of the Act which have application to dry counties, notably section 18, p. 56, which provides for licenses to be issued for the sale in certain kinds of railroad cars for consumption while en route on the railroad. There may be others which we will not undertake to find.

The Act should not be controlled by any certain isolated extracts from it, but rather by a study of the animating current which permeates it.

The prohibition laws of Alabama in existence before the Alabama Beverage Control Act was enacted were complete in every detail. Many features existed merely to prevent evasions. An indictment in broad language was held to be sufficient and to embrace any device or substitute. Section 4644, Code; Noltey v. State, 225 Ala. 584, 144 So. 457. They are set out in Chapter 167, Code, consisting of sixteen articles—sections 4615 to 4800, and

**4**

those enacted subsequent to the Code of 1923. Their purpose is declared to be to suppress the evils of intemperance. They create many offenses both felonies and misdemeanors. See Slater v. State, 230 Ala. 320, 162 So. 130.

■ When the Alabama Beverage Control Act, section 51, provided that it shall not go into effect in a dry county, and that all laws prohibiting the *manufacture and sale* of alcoholic liquors shall remain in force in them, we think it meant, as stated by the Court of Appeals in the Williams case, supra, that the said Act should not be there effective to the extent that it conflicts with existing laws which suppress the evils of intemperance and prohibit evasions and subterfuges and which provide for crimes and penalties and prescribe remedies, including the entire body of such laws, except as may be otherwise apparent in it. This does not prevent the application in dry counties of such features as were evidently intended to apply there.

■ We are clear to the conclusion that section 47, supra, is of the latter class and has effect in dry counties, as a proper interpretation of the language of section 51, supra.

ANDERSON, C. J., and GARDNER, THOMAS, and BOULDIN, JJ., concur.

BROWN, J., concurs specially.

KNIGHT, J., dissents.

BROWN, Justice (concurring specially).

Holt was indicted, tried and convicted, in the Circuit Court of Lauderdale County, of the offense denounced by section 47 of the "Alabama Beverage Control Act". Acts 1936–37, page 80.

Lauderdale, as we judicially know, is a dry county within the meaning of said Beverage Control Act, and it is stated in the query submitted by the Court of Appeals that said offense, if committed at all, was committed in said county.

"Query: Is said section of said act in effect and operative in said dry county?"

On this question the Judges of said Court of Appeals are not in agreement, and their disagreement arises out of their interpretation of the opinion of that court in Williams v. State, 28 Ala.App. 73, 179 So. 915, 919, and more especially, the effect of § 51 of said act which provides:

"In every County where a majority of the electors voting in said election vote 'Yes', this Act, and all of its provisions, shall be immediately put into operation in such County, but in every County where a majority of the electors voting in said election vote 'No', this Act shall not go into effect in such County, *and all laws prohibiting the manufacture and sale* of alcoholic liquors or beverages now in force and effect in Alabama shall remain in full force and effect in every such County." [Italics supplied.]

The opinion in the Williams case observed:

"Without tediously further prolonging our opinion, we are clear to the conclusion that it is altogether 'practicable' to construe the Alabama Beverage Control Act in such a way that both it and Code 1928, § 4621, 'may stand together' and not 'conflict'—in a 'dry' county, such as Walker.

"A little more specifically, it is our view that a proper construction of said act is that it applies *solely* to the 'wet' counties of the state."

This interpretation gives too much emphasis to the provisions of said § 51, that "Where a majority of the electors voting in said election vote 'No', *this Act shall not go into effect in such County,*" and ignores the limitation placed on that clause immediately following, to wit: "and all laws prohibiting the *manufacture and sale* of alcoholic liquors or beverages now in full force and effect in Alabama shall remain in full force and effect in every such County." [Italics supplied.]

The legislative intent expressed, though in awkward phraseology, being that said act in so far as it authorizes the manufacture and sale of alcoholic liquors and beverages should not go into effect in such counties. This thought is given emphasis by next to the last paragraph in said Section 51, this paragraph reads:

"In all dry Counties, as defined in this Section, the Statutes of Alabama prohibiting the *manufacture, sale or distribution of Alcoholic Beverages shall remain in full force and effect,* and any person, firm, or corporation convicted of violating any of the provisions of the present statutes of Alabama regulating or defining the illegal manufacture, sale or distribution of alcoholic beverages shall be punished as now provided by such laws." [Italics supplied.]

These are the laws "specially provided for" in § 61 embodying the repealing clause.

The Beverage Control Act was passed and intended by the Legislature to operate as a general law, applicable to every County of the State, setting up a county option system, to operate harmoniously with the existing laws, not repealed by it, relating to the troublesome and vexatious subject of the traffic in alcoholic liquors and beverages, and in regulation of the traffic therein under the police power of the State. State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487.

To construe said act as a whole as operating "only" in wet counties, would destroy its major purpose—county option—and render it violative of §§ 106 and 110 of the Constitution.

Said "Alcoholic Beverage Control Act," to carry out the legislative intent, must be construed, not as a separate antagonistic system at war with the existing statutes relating to the liquor traffic, but as in pari materia with said existing statutes, and together constituting a harmonious system of law governing that subject. American Standard Life Ins. Co. v. State, 226 Ala. 383, 147 So. 168; 18 Alabama Digest, Statutes, page 130, ☞225.

This is evidenced by § 61 of said Beverage Control Act which provides that:

"All laws and parts of laws in conflict herewith, either special or general except as herein otherwise *specially provided* are hereby repealed, provided that nothing herein shall relieve any person, firm or corporation from any penalty or tax liability or forfeiture incurred under former laws, and nothing herein contained shall be construed as repealing any of the laws of Alabama relating to the manufacture or possession of *illicit distilled liquor* or apparatus for the manufacture of same, nor any law now fixing fees to officials for the enforcement of any and all laws, including this Act, but the same shall remain in full force and effect. Provided, however, that neither this Section nor any of the provisions of this Act shall affect in any way offense already committed, or any indictment already found for the violation of the prohibition laws of this State or any pending criminal action based upon such laws." [Italics supplied.]

There are many provisions in the Beverage Control Act applicable to the entire State that tend to support and strengthen the prohibition statutes applicable to dry counties, some of these follow:

"Section 3. * * * (c) Except as herein otherwise expressly provided, the purpose of this Act is to prohibit transactions in liquor and alcohol, and malt or brewed beverages, which take place wholly within the State, except by and under the control of the Board, as herein specifically provided, and every section and provision of this Act shall be construed accordingly. The provisions of this Act, through the instrumentality of the Board, and otherwise, provide the means by which such control shall be made effective.

*     *     *     *     *     *

"Section 6., * * * (m) All liquors, vinous beverages and alcohol sold or distributed by the Board or any licensee of said Board shall be stamped or endorsed in such characteristic way or manner to be determined by the Board as shall clearly indicate that it has been dispensed by the Board, and all such liquors, vinous beverages or alcohol not containing such label shall be contraband and subject to forfeiture as other contraband liquors. The Board is hereby authorized to purchase from time to time the necessary stamps, crowns or lids in a quantity sufficient for a period not to exceed six months, for identifying each article sold and/or distributed by and through said 'State Liquor Stores.'

*     *     *     *     *     *

"Section 10. In order to protect the welfare, health, peace, temperance and safety of the people of the State, and to prevent the return of the saloon atmosphere, there shall be no alcoholic beverages as defined herein sold in less than sealed packages and/or consumed by purchasers, except as hereinafter provided. There shall be no open saloons operated within this State.

*     *     *     *     *   .     *

"Section 24. * * * (9) For any person to manufacture, transport or import any vinous and/or malt or brewed beverages into this State, except in accordance with the rules and regulations of the Board, or for any person to transport vinous and/or malt or brewed beverages into or within this State unless there shall be affixed to the original container in which such vinous and/or malt or brewed beverages are transported, stamps, crowns or lids evidencing the payment of the vinous and/or malt tax to the State. Provided, however, that this clause shall not be construed to

prohibit transportation of vinous, and/or malt or brewed beverages through this State and not for delivery therein if such transportation is done in accordance with the rules and regulation of the Board.

"Section 25. (1) Things of Value Not to be Offered: It shall be unlawful for any person licensed to sell vinous and/or malt or brewed beverages to offer or give anything of value as a premium for the return of caps, stoppers, corks, stamps, or labels taken from any bottle, case, barrel or package containing such vinous and/or malt or brewed beverages, or to offer or give anything of value as a premium or present to induce the purchase of such vinous and/or malt or brewed beverages or for any other purpose whatsoever in connection with the sale of such vinous and/or malt or brewed beverages: Provided, however, that this section shall not apply to the return of any moneys specifically deposited for the return of the original containers to the owners thereof.

\* \* \* \* \* \*

"(3) Transportation in Original Packages: It shall be unlawful for any licensee or transporter for hire to transport any vinous and/or malt or brewed beverages except in the original containers. It shall be unlawful for any transporter for hire to transport any vinous and/or malt or brewed beverages within this State unless such transporter shall hold a permit issued by the Board and shall have paid to the Board a permit fee, not exceeding One Hundred ($100) Dollars.

"(4) Delivery Vehicles to bear Name and Address of Distributor, Wholesaler, or Manufacturer: It shall be unlawful for a manufacturer, wholesaler or distributor to deliver any vinous and/or malt or brewed beverages excepting in vehicles bearing the name and address and license number of such distributor, wholesaler or manufacturer painted or affixed on each side of such vehicle in letters no smaller than four inches in height.

\* \* \* \* \* \*

"Section 29. The tax herein levied shall be paid through the use of stamps, crowns or lids. Stamps, crowns or lids in denominations to the amount of the tax shall be affixed to the bottles, cans, or containers from or in which articles taxed herein are normally sold at retail. All taxable articles herein enumerated, when offered for sale, either at wholesale or retail, without having stamps, crowns or lids affixed in the manner set out in this Act, shall be subject to confiscation in the manner provided for contraband goods as set out in this Act.

"Section 30. Method and Time of Affixing Stamps. The license taxes imposed by this Act shall be paid by affixing stamps, crowns or lids in the manner and at the time herein set forth. The stamps, crowns or lids shall be affixed to the bottle, or container, in which or from which normally sold at retail. Time allowed for affixing stamps, crowns or lids shall be follows: Every wholesaler, distributor or retail dealer in this State shall immediately after receipt of any unstamped taxable articles enumerated and defined herein, unless sooner offered for sale, cause the same to have the requisite denominations and amount of stamp, crown or lid or stamps, crowns or lids to represent the tax affixed as stated herein, and to cause same to be cancelled by writing or stamping across the face of each stamp the registered number of such wholesaler, distributor or retailer, said number to be furnished by the Board.

"Section 31. Wholesaler, Distributor, or Retail Dealer. The stamping of alcoholic beverages as enumerated and defined herein shall actually begin within one (1) hour after receipt of said alcoholic beverages in the premises of the wholesaler, distributor or retail dealer and said stamping shall be continued with reasonable diligence by the wholesaler, distributor, or retail dealer until all of the unstamped alcoholic beverages as enumerated and defined herein have been stamped and the stamps cancelled as provided by law.

\* \* \* \* \* \*

"If, upon examination of invoices of any wholesaler or distributor or retail dealer, he is unable to furnish evidence to the Board of sufficient stamp purchases to cover unstamped alcoholic beverages as enumerated and defined herein, purchased by him, the prima facie presumption shall arise that such alcoholic beverages were sold without the proper stamps affixed thereto.

\* \* \* \* \* \*

"Section 33. Commodities Subject to Confiscation. Any alcoholic beverages enumerated and defined herein, or other products taxable under this Act, found at any point within the State of Alabama, which said alcoholic beverages enumerated and defined herein, or other products taxable under this Act, shall have been within the State of Alabama for a period of two

(2) hours, or longer, in possession of any retailer, or for a period of thirty-six (36) hours or longer, *in possession of any wholesaler or distributor not having affixed to the package as above defined* the stamps, crowns or lids as above provided, are hereby declared to be contraband goods and the same may be seized by the Board, or its agents, and/or by any peace officer of the State of Alabama, without a warrant and the said goods shall be delivered to the Board for sale at public auction to the highest bidder after due advertisement, but the Board before delivering any of said goods so seized, shall require the purchaser to affix the proper amount of stamps, crowns or lids to the individual package as above defined. The proceeds of sale for any goods sold hereunder shall be turned over to the State Treasurer by the Board as other funds collected by said Board. Provided, that the cost of confiscation and sale shall be paid out of the proceeds derived from such sales before making remittance to the State Treasurer. Provided, further, that any of the goods, wares, or merchandise herein enumerated, and all such goods, wares or merchandise when offered for sale, either at wholesale or retail without the stamps, crowns or lids having been first affixed, shall be subject to confiscation as hereinabove provided. Provided, further, than [that] any vehicle not a common carrier, which may be used for the transportation for the purpose of sale of unstamped articles as hereinabove enumerated shall likewise be subject to confiscation and sale in the manner as above provided for goods, wares or merchandise without stamps, crowns or lids. Provided, further, should any alcoholic beverages without stamps, crowns or lids as enumerated and defined herein be found in any vehicle which is engaged in the sale, distribution or delivery of taxable alcoholic beverages, the same shall be prima facie evidence that it was there for sale. [Italics supplied.]

"Section 34. Other Commodities Subject to Confiscation. Any alcoholic beverages as enumerated and defined in this Act, to be sold and/or distributed by and through State Liquor Stores, found within this State in the possession of or on the premises of any person, firm, corporation or association of persons not having affixed thereto such mark of identification showing that said alcoholic beverages were sold and/or distributed by a State Liquor Store, shall be subject to confiscation and sale in the same manner as set forth in this Act for malt or brewed beverages as defined herein, and vinous beverages not exceeding twenty-four (24%) per cent by volume which do not have affixed thereto the required revenue stamps as provided for in this Act, and said persons who are found guilty of having in their possession any such contraband liquors, shall be subject to the same fines and imprisonment as set forth in this Act for persons having in their possession any malt and/or vinous beverages without the proper stamps affixed thereto as required by this Act.

\* \* \* \* \* \*

"Section 36. \* \* \* Any rules or regulations of the Board when duly made and promulgated, shall have the full force and effect of law. Any person violating such rule when duly made and promulgated, shall be guilty of a misdemeanor and shall upon conviction be fined not less than Fifty ($50.00) Dollars, nor more than One Hundred ($100.00) Dollars for each offense.

"Section 37. All 'Common Carriers,' contract carriers, buses and trucks transporting alcoholic beverages enumerated and defined herein, may be required under regulations to be prescribed by the Board to transmit to said Board a periodic statement of such consignments or deliveries of alcoholic beverages as enumerated and defined herein, showing date, point of origin, point of delivery and to whom delivered, and time of delivery, and all common carriers, buses, or trucks shall permit the examination by the Board, or its agents, of their records relating to shipment or receipt of alcoholic beverages enumerated and defined herein. Common carriers, buses and trucks shall permit examination of their records of shipment or receipts relating to alcoholic beverages enumerated and defined herein when and where investigation made by the Board of its agents may deem it advisable and necessary to the enforcement of this Act. Inspectors, stamp deputies and other duly authorized agents of the Board, on proper identification from an authorization by the Board, shall make such examination.

\* \* \* \* \* \*

"Section 41. The Board is hereby authorized to design stamps, crowns or lids to be affixed to alcoholic beverages as herein defined sold in the State of Ala-

bama, and shall require breweries, vendors or manufacturers of wine and distillers or wholesalers of all other alcoholic commodities to affix such stamps, crowns, or lids on beer, wines or liquors sold within the State.

"Section 41½. (a) The board is hereby authorized and directed to have prepared and distributed stamps, tax-paid crowns and lids suitable for denoting taxes on all articles enumerated herein. Any person, firm, corporation or association of persons, other than the board or persons, firms, corporations or associations of persons designated and bonded by the board who sell stamps, tax-paid crowns or lids not affixed to alcoholic beverages sold and delivered by them, whether the said stamps, tax-paid crowns or lids be genuine or counterfeit, shall be guilty of a felony and punishable as set out in Section 46 of this Act. All stamps, crowns or lids provided for in this Act shall be prescribed by the Board and under rules and regulations prescribed by the Boards they shall be purchased by the manufacturer or other person after the payment of the tax imposed by this Act whenever such person, firm, or corporation as may be designated as manufacturers of such stamps, crowns, or lids by the board is authorized to enter into a contract on behalf of the State with one or more manufacturers for the manufacture, sale and distribution of such stamps, crowns or lids and shall require of such persons, firms or corporations so manufacturing, selling and distributing such stamps, crowns or lids a bond or bonds with a Company authorized to do business in the State as surety payable to the State of Alabama in such penalty and upon such conditions as in the opinion of the Board will adequately protect the State. The stamps, crowns or lids shall be manufactured, sold and distributed at the cost of the tax-payer.

"(b) It is the intention and purpose of this Act to require all manufacturers and other persons as herein provided to affix stamps crowns or lids as will be prescribed by the Board to all original containers in which alcoholic beverages are normally placed and prepared for market, received, sold or handled, before such beverages are sold, offered for sale, or held for sale within this State.

"(c) Any person, firm, corporation or association of persons who desire to use tax-paid crowns or lids and having been qualified by the Board to use said tax-paid crowns or lids, as provided in this Section shall be required to pay the cost of the examination of their records by examiners of the board to determine the amount of taxes due and paid to the State by said person, firm, or corporation, said examination to be made at least quarterly by the examiners of the Board.

\* \* \* \* \* \*

"Section 42. \* \* \* Provided, further, than [that] any person, firm, corporation or association of persons, who shall be found guilty of violating any of the provisions as set out in this sub-section of this act, or who received or stores any of the articles of alcoholic beverages enumerated herein for sale within the State of Alabama, shall be guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than $200.00 nor more than $500.00 or imprisoned in the county jail for a period not to exceed six (6) months, either or both, at the discretion of the Court.

\* \* \* \* \* \*

"Section 43. \* \* \* (c) The word 'Stamps,' 'Crowns' or 'Lids' as used herein means the stamps, crowns or lids by the use of which the tax levied under this Act is paid. The Board shall design the form and kind of stamps, crowns or lids to be used and shall duly adopt and promulgate such form of stamps, crowns or lids. Such stamps, crowns or lids so adopted and promulgated shall be known and termed as 'Alabama Revenue Stamps, Crowns or Lids' and in any information or indictment, it shall be sufficient to describe the stamps, crowns or lids as 'Alabama Revenue Stamps, Crowns or Lids.'

\* \* \* \* \* \*

"Section 45. Penalties For Evading Stamp Tax—Trial by Jury If Desired. Persons failing to properly affix the required stamps, crowns or lids to any alcoholic beverages enumerated and defined herein shall be required to pay as part of the tax imposed hereunder, a penalty of not less than Fifty ($50.00) Dollars, nor more than Five Hundred ($500.00) Dollars, to be assessed and collected by the Board as other taxes are collected. And each article or commodity not having proper stamps, crowns or lids affixed thereto as herein required shall be deemed a separate offense.

\* \* \* \* \* \*

"Section 46. Penalties For Fraud In Use or Re-Use of Stamps, Crowns or Lids—

"That whoever removes or otherwise prepares any Alabama Revenue Stamps, Crowns or Lids, or stamps, crowns or lids used to identify alcoholic beverages sold and/or distributed by State Liquor Stores, with intent to use, or cause the same to be used, after it has already been used, or buys, sells, offers for sale, or gives away any such washed or removed and restored stamps, crowns or lids to any person for using or who used the same or has in his possession any washed or restored or removed or altered stamp, crown or lid for the purpose of indicating the payment of any tax hereunder re-uses any stamp, crown or lid which has heretofore been used for the purpose of paying any tax provided in this Act, or identifying any articles enumerated and defined in this Act, whoever except the Board sells any Alabama Revenue Stamps, Crowns or Lids not affixed to taxable alcoholic beverages as provided herein, is guilty of a felony and, upon conviction, shall be punished by imprisonment in the penitentiary for not less than a year and a day, nor more than five (5) years, and in addition may be fined not less than One Thousand ($1,000.00) Dollars, nor more than Five Thousand ($5,000.00) Dollars.

"Section 47. Counterfeit Stamps, Crowns or Lids:—That whoever manufactures, buys, sells, offers for sale, or has in his or its possession any reproduction or counterfeit of the Alabama Revenue Stamps, Crowns or Lids provided for in this Act, or stamps, crowns or lids used to identify articles sold and/or distributed by State Liquor Stores, is guilty of a felony and, upon conviction, shall be punished by imprisonment in the penitentiary for not less than a year and a day, nor more than ten (10) years, and in addition, may be fined not less than Two Thousand ($2,000.00) Dollars, nor more than Ten Thousand ($10,000.00) Dollars.

\* \* \* \* \* \*

"Section 56. It shall be unlawful for any person, firm or corporation to receive in this State any shipment of any of the articles taxed herein without the stamps, crowns or lids, as required by this Act, and knowing the same to be without stamps, crowns or lids, for the purpose and intention of violating the provisions of this Act, and to avoid payment of the taxes, such person, firm or corporation shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than Twenty-five ($25.00) Dollars, or sentenced to jail for not less than thirty (30) days or more than sixty (60) days, either or both. Provided, that in the event this provision shall be declared unconstitutional by the Courts, it shall not affect the remaining sections."

The manifest purpose of said Section 47 is to prohibit counterfeiting of "stamps, crowns and lids," and to prevent evasion of the taxing features of the law, and fraudulent practices by persons engaged in the illegal traffic of prohibited liquors in the State, and is applicable to such fraudulent practices in dry as well as wet counties.

There are a few of the provisions of the prohibition statutes that are in direct conflict with some of the provisions of the Beverage Control Act, in which the legislative intent that such provisions shall apply to the whole State is not left to inference or construction, but is expressed in plain language, among others the provisions of § 4621, making it a misdemeanor to "have in possession" alcoholic liquors. This statute has been construed to apply to both persons where one party gave the other a drink out of a bottle or jug.

In Harbin's case, Harbin v. State, 19 Ala.App. 623, 99 So. 740, 742, the Court of Appeals first held "that, to constitute 'possession' of or to 'possess' prohibited liquors * * * the person charged must either have a property interest in the prohibited liquors and have some dominion over it, or, in the absence of property interest, must have complete manucaption and dominion over the prohibited liquors; that it is not sufficient to show a mere temporary custody in the presence of the owner." This Court, speaking through Somerville, J., for a majority, on review held: "That this view of the statute is erroneous, and we hold that the possession prohibited includes any possession by manucaption or physical dominion, of however brief duration, and in whatever capacity the possession may be held, if it be for the use, benefit, or enjoyment of himself or any other person." Ex parte State ex rel. Atty. Gen., Harbin v. State, 210 Ala. 55, 97 So. 426.

That part of said section of the Code, as thus construed, is in direct conflict with the following provisions of the Beverage Control Act: Section 18, which authorizes the issuance of a license to common carriers of passengers by rail and water to serve liquors, bearing the State stamp, en

route in dining cars and dining salons. It is in conflict with § 19, subsection 1, of the Beverage Control Act which authorizes persons licensed by the Beverage Control Board "to transport, sell and deliver vinous beverages and malt or brewed beverages at or from one or more places of manufacture or storage only *in original packages anywhere within the State.*" [Italics supplied.]

It is in direct conflict with subsection 2, of said § 19, which authorizes the Board to license reputable persons, and provides: "Such license shall authorize the holder thereof to sell or deliver vinous or malt or brewed beverages in sealed containers anywhere within the State of Alabama."

It is in conflict with § 52 of the Beverage Control Act, which provides: "It shall be unlawful to sell alcoholic beverages within any county where the electors have voted against such sales, *except as authorized by Section 18 herein.*" [Italics supplied.]

It is in conflict with §§ 34 and 61, which makes the possession of unstamped and "illicitly distilled liquors" only unlawful.

It is in conflict with the provisions of the Beverage Control Act which authorizes the Board by rule to provide for the transportation of State taxed liquors on the highways of the State.

The doctrine of implied repeal, applied by the Court of Appeals, is not applicable. If there is a direct conflict between the prohibition statutes and the Beverage Control Act, said § 61 by express provision repeals such conflicting provisions.

The query must, therefore, be answered in the affirmative. The final and specific utterance by the Court of Appeals in the Williams case "it is our view that a proper construction of said act is *that it applies solely to the 'wet' counties of the state*" is unsound and to that extent at least it should be disapproved. [Italics supplied.]

I am further of opinion that § 4621 of the Code which makes the possession of alcoholic liquors a misdemeanor has been repealed; that legally purchased, stamped, taxed state sold liquors are property and their possession for personal use by a citizen is not a violation of the law. The Legislature adopting the Act certainly expressed that intent when they wrote into law Section 5 which provides, inter alia: "The provisions of this Act shall not prevent any officer, member, agent, or employee of the Board from purchasing and keeping in his possession for the personal use of himself, members of his family, or guests, liquor or malt or brewed beverages which may be purchased or kept by any person by virtue of this Act."

The legislative declaration was wholly unnecessary as to wet counties, and was intended, no doubt, to protect the class mentioned therein, in dry counties.

KNIGHT, Justice (dissenting).

In my dissenting opinion in the recent case of State ex rel. Wilkinson v. Murphy, Ala.Sup., 186 So. 487,[1] the writer expressed the view that the Alabama Beverage Control Act (General Acts, Special Session, 1936–1937, page 40) was void in its entirety as being violative of section 93, as amended, of the Constitution. I am still of the same opinion.

In the Williams case, 28 Ala.App. 73, 179 So. 915, 916, this Court committed itself to the proposition that the forty odd counties of the State which voted "no" in the referendum election were, and would be, unaffected by the Alabama Beverage Control Act, that the dry status of said counties would be undisturbed.

No other conclusion could have been reached in view of section 51 of the Act, which reads, in part: "In every County where a majority of the electors voting in said election vote 'Yes', this Act, and all of its provisions, shall be immediately put into operation in such County, *but in every County where a majority of the electors voting in said election vote 'No', this Act shall not go into effect in such County, and all laws prohibiting the manufacture and sale of alcoholic liquors or beverages now in force and effect in Alabama shall remain in full force and effect in every such County.*" (Italics supplied.)

In the opinion just written, and concurred in by the majority of my brothers, it appears that in the forty odd counties which actually voted "no," there exists a *modified dry status only,* for we find them holding on the question now before us that the Alabama Beverage Control Act did go into effect in said counties to the extent of authorizing the sale of alcoholic beverages when made *"in certain kinds of railroad cars for consumption while en route on the railroad,"* and further saying, *"there may be others* [meaning instances

---

where liquors may be sold] *which we will not undertake to find."* (Italics supplied.)

Just where the majority purpose to leave the "dry" counties, we must leave it to them to say. I do not profess to know, and I am sure the people of the "dry" counties will be unable to determine.

But I do know, and the people of Alabama know, that the Alabama Beverage Control Act expressly provided in section 51 that, upon the passage of said Act, the Governor of Alabama was solemnly enjoined, within one week after the passage of the same, to call an election (quoting the language of the Act) "to determine the sentiment of the voters of *each of the Counties of the State* as to whether or not alcoholic beverages shall be legally sold and distributed in each such county. * * At said election there shall be printed on the ballot used the following question: 'Do you favor the legal sale and distribution of alcoholic beverages in this County? Yes— No. —' * * * When the returns from said election are tabulated, the Governor shall issue a proclamation declaring the result of the election in each of the counties of the State. In every County where a majority of the electors voting in said election vote 'Yes', this Act, and all of its provisions, shall be immediately put into operation in such County, but in every County where a majority of the electors voting in said election vote 'No', this Act shall not go into effect in such County, and all laws prohibiting the manufacture and sale of alcoholic liquors or beverages now in force and effect in Alabama shall remain in full force and effect in every such County." (Italics supplied.)

If what the majority now hold, viz., that the prohibition statutes of Alabama were modified by the Alabama Beverage Control Act as to those counties which voted "no" in said election, so as to make the sale of alcoholic beverages legal, under certain circumstances, in such dry counties, then it would seem that the people in said counties were misled, to say the least of it. We are unwilling to ascribe any such purpose to the lawmakers, but prefer to hold that the majority have misunderstood and improperly interpreted the statute.

For the above expressed reasons I cannot subscribe to views of the majority, and content myself with standing upon my dissenting opinion set forth in the case of State ex rel. Wilkinson v. Murphy, supra.

